IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 8, 2017 Session

## STATE OF TENNESSEE v. CHRISTOPHER MINOR

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Madison County**
**No. 15-167   Roy B. Morgan, Jr., Judge**

_____

**No. W2016-00348-SC-R11-CD**

_____

We granted this appeal to clarify the interplay among appellate review preservation requirements, the plain error doctrine, and the retroactive application of new rules.  We conclude that a new rule applies retroactively to cases pending on direct review when the new rule is announced but does so subject to other jurisprudential concepts, such as appellate review preservation requirements and the plain error doctrine.  Accordingly, the Court of Criminal Appeals' decision in State v. Bonds, 502 S.W.3d 118 (Tenn. Crim. App. 2016), perm. app. denied (Tenn. Aug. 18, 2016), declaring the criminal gang offense statute, see Tenn. Code Ann. § 40-35-121(b) (2014), unconstitutional applies to the defendant's appeal because it was pending on direct review when Bonds was decided. Nevertheless, we evaluate the defendant's entitlement to relief by applying the plain error doctrine because the defendant failed to challenge the constitutionality of the statute in the trial court.  We conclude that the defendant has established the criteria necessary to obtain relief pursuant to the plain error doctrine.  Therefore, we reverse that portion of the Court of Criminal Appeals' decision denying the defendant relief and vacate the defendant's convictions under the criminal gang offense statute.  We remand this matter to the trial court for resentencing on the defendant's remaining convictions in accordance with the sentencing classification ranges established by the specific statutes creating the offenses, without any classification or sentence enhancement pursuant to the criminal gang offense statute.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal**
**Appeals Reversed; Case Remanded for Resentencing**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.  SHARON G. LEE, J., filed a separate concurring opinion.

Lee R. Sparks and Joshua B. Dougan, Jackson, Tennessee, for the appellant, Christopher Minor.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Jeffrey D. Zentner, Assistant Attorney General; James G. Woodall, District Attorney General; and Aaron J. Chaplin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual Background[1]

On June 8, 2014, Christopher Minor, a member of the Black P–Stone Nation criminal gang,[2] and another gang member went to an apartment Rico Swift shared with his girlfriend, Julie Frye, on the pretext of buying marijuana. They were acting on orders from a gang leader to rob Mr. Swift, and other gang members were waiting just outside the apartment. The two men entered the apartment, and, when Mr. Swift turned his back to retrieve the marijuana, they attacked him, punching and choking him. During the assault, the other gang members entered the apartment. According to Ms. Frye, the men choked Mr. Swift until his legs "started jumping" and he turned blue. When Ms. Frye attempted to leave the room to grab a knife to assist Mr. Swift, the defendant followed her and struck her with a gun, knocking her unconscious. By the time Ms. Frye regained consciousness, the assailants were gone, but Mr. Swift was lying on the sofa, unconscious and badly injured in a pool of his own blood. Emergency personnel were summoned, but Mr. Swift died from the injuries he sustained. Ms. Frye later discovered that the assailants had also stolen items from her purse.

Days later, police investigators linked the defendant to the crime. They showed Ms. Frye a photographic array, and she identified the defendant as the person who beat Mr. Swift and knocked her unconscious. When the officers questioned the defendant, he admitted being present at Mr. Swift's apartment, but he denied any involvement in assaulting Mr. Swift or Ms. Frye. According to the defendant, he was simply a scout and left the apartment and advised the gang members waiting outside not to go through with the planned robbery because Mr. Swift was not alone. The defendant admitted accepting his share of the proceeds from the robbery, however, explaining that he would have been disciplined by the gang had he refused.

---

[1] This opinion includes only a summary of the facts necessary to provide context for the legal issues presented in this Court. A detailed recitation of the proof offered at the defendant's trial may be found in the Court of Criminal Appeals' opinion. See State v. Minor, No. W2016-00348-CCA-R3-CD, 2017 WL 634781 (Tenn. Crim. App. Feb. 16, 2017), perm. app. granted (Tenn. July 20, 2017).

[2] Like the Court of Criminal Appeals, for consistency we also refer to the defendant's gang as the "Black P–Stone Nation," although various references were used at trial.

- 2 -

The Madison County Grand Jury returned a sixteen-count indictment charging the defendant with two counts of felony murder,[3] two counts of aggravated robbery,[4] one count of aggravated burglary,[5] one count of aggravated assault,[6] six counts of violating the criminal gang offense statute,[7] which corresponded to the preceding six offenses charged in the indictment, one count of being a convicted felon in possession of a handgun,[8] one count of employing a firearm during the commission of a dangerous felony,[9] one count of being a convicted felon who employed a firearm during the commission of a dangerous felony,[10] and one additional count of violating the criminal gang offense statute, which corresponded to the charge of being a convicted felon in possession of a handgun.[11] In the first phase of the defendant's bifurcated trial, the jury convicted him on the charges of felony murder, aggravated robbery, aggravated burglary, aggravated assault, and employing a firearm during the commission of the dangerous felony of aggravated burglary. In the second phase of the trial, the jury convicted the defendant on the remaining charges, including the seven counts of violating the criminal gang offense statute. These convictions qualified the defendant for sentencing on the criminal gang offenses at "one (1) classification higher than the classification established by the specific statute[s] creating the offense[s] committed." Tenn. Code Ann. § 40-35-121(b).[12]

---

[3] Tenn. Code Ann. § 39-13-202(a)(2) (2014).

[4] Tenn. Code Ann. § 39-13-402 (2014).

[5] Tenn. Code Ann. § 39-14-403 (2014).

[6] Tenn. Code Ann. § 39-13-102 (2014).

[7] Tenn. Code Ann. § 40-35-121(b).

[8] Tenn. Code Ann. § 39-17-1307(c)(1) (2014).

[9] Tenn. Code Ann. § 39-17-1324(b)(1) (2014).

[10] Tenn. Code Ann. § 39-17-1324(h)(2) (2014)

[11] Tenn. Code Ann. § 40-35-121(b)(1).

[12] Another subsection of the statute provides that if the offense subject to enhancement is a Class A felony, the presumptive sentence shall be the maximum in the range from which the defendant is sentenced. Tenn. Code Ann. § 40-35-121(d). This statute had no impact on the defendant's sentencing because he was not convicted of a Class A felony. Because first degree murder is punished by either life imprisonment, life imprisonment without the possibility of parole, or death, first degree murder is not punished according to the sentencing classification structure applicable to other offenses. Tenn. Code Ann. § 39-11-117 (2014) & Sentencing Comm'n Cmnts. The "sole and exclusive purpose" for which first degree murder is considered a Class A felony—the determination of the classification of prior offenses under the sentencing guidelines—does not apply here. Id. § 39-11-117(b).

The transcript of the sentencing hearing is not included in the record on appeal, but the judgments reflect the trial court's decision to merge several of the defendant's convictions and impose a total effective sentence of life plus twenty years. Although the record is not crystal clear, at least ten years of the defendant's effective sentence resulted from enhancement under the criminal gang offense statute. Additionally, the trial court recorded the defendant's convictions of aggravated robbery, aggravated burglary, aggravated assault, and felon in possession of a handgun as one classification higher than the classifications established by the statutes creating the offenses, as authorized by the criminal gang offense statute. Tenn. Code Ann. § 40-35-121(b).

After the defendant's trial but during the pendency of his appeal, the Court of Criminal Appeals issued a decision in another case which declared the criminal gang offense statute unconstitutional. Bonds, 502 S.W.3d at 152–62. In his appeal to the Court of Criminal Appeals, the defendant relied on Bonds to attack—for the first time— the constitutionality of the criminal gang offense statute, arguing that his convictions under the statute should be vacated and his case remanded to the trial court for resentencing. Minor, 2017 WL 634781, at *8-9. The defendant also challenged the sufficiency of the evidence to support his convictions. Id. at *7. The State countered that the evidence sufficiently supported the defendant's convictions, that the defendant had waived his constitutional challenge to the statute by failing to raise the issue in the trial court, and that the defendant was not entitled to relief on his constitutional claim via the plain error doctrine. Id. A majority of the Court of Criminal Appeals agreed with the State's arguments and affirmed the defendant's convictions and sentences. Id. at *9.

In applying the plain error doctrine and answering the question of whether a clear and unequivocal rule of law had been breached, the majority in the Court of Criminal Appeals focused on the law existing at the time of the defendant's trial rather than at the time of appeal and concluded that no breach had occurred because, like any other statute, the criminal gang offense statute was presumptively constitutional until later declared invalid by Bonds. Id. One judge dissented and would have reversed and vacated the defendant's convictions under the criminal gang offense statute. The dissenting judge opined that even though he had not raised the issue in the trial court, the defendant was entitled to the benefit of the ruling in Bonds unconstrained by the plain error doctrine because his case was pending on appeal when Bonds was decided. Id. at *11 (McMullen, J., concurring in part and dissenting in part). We granted the defendant's application for permission to appeal, and in the order doing so, notified the parties of this Court's particular interest "in briefing and argument on the effect, if any, of Henderson v. United States, 568 U.S. 266 (2013)." State v. Minor, W2016-00348-SC-R11-CD (Tenn. July 20, 2017) (order granting Tennessee Rule of Appellate Procedure 11 application).

- 4 -

## II.  Standards of Review

This appeal requires us to determine the standards that apply when a defendant fails to challenge the constitutionality of a statute at trial but raises the issue on appeal based on an intervening appellate court decision declaring the statute unconstitutional.[13] Encompassed within this general issue are several more specific questions regarding the interplay among appellate review preservation requirements, the plain error doctrine, and the retroactive application of appellate court decisions.  All of these issues are questions of law to which de novo review applies.  See State v. Knowles, 470 S.W.3d 416, 423 (Tenn. 2015) ("Whether the plain error doctrine has been satisfied is a question of law which we review de novo."); Bush v. State, 428 S.W.3d 1, 16 (Tenn. 2014) (stating that whether a new rule of constitutional law is entitled to retroactive application is a question of law subject to de novo review); State v. Cooper, 321 S.W.3d 501, 506 (Tenn. 2010) (explaining that de novo review applies to the determination of whether a defendant is entitled to relief via the plain error doctrine).

## III.  Analysis

### A.  Preserving Issues for Appellate Review

Appellate review generally is limited to issues that a party properly preserves for review by raising the issues in the trial court and on appeal.  See Tenn. R. Crim. P. 51; Tenn. R. Evid. 103(a)-(b); Tenn. R. App. P. 3(e); 13(b), 27(a)(4), 36(a); State v. Bledsoe, 226 S.W.3d 349, 353–54 (Tenn. 2007).  The obligation to preserve issues for appellate review applies to constitutional issues and issues of "any other sort."  United States v. Olano, 507 U.S. 725, 731 (1993); see also Puckett v. United States, 556 U.S. 129, 134 (2009); Yakus v. United States, 321 U.S. 414, 444 (1944); State v. Bishop, 431 S.W.3d 22, 43 (Tenn. 2014); State v. Jordan, 325 S.W.3d 1, 58 (Tenn. 2010).  Appellate review preservation requirements ensure that the defense and the prosecution are afforded an opportunity to develop fully their opposing positions on an issue, and such requirements also enable a trial court to avoid or rectify an error before a judgment becomes final.  Puckett, 566 U.S. at 134; Bishop, 431 S.W. at 43; Jordan, 325 S.W.3d at 57–58.  As a result, appellate review preservation requirements serve to promote fairness, justice, and judicial economy by fostering the expeditious avoidance or correction of errors before their full impact is realized, and in this way, may obviate altogether the need for appellate review.  Jordan, 325 S.W.3d 57–58; see also United States v. Young, 470 U.S. 1, 15 (1985) (recognizing that appellate review preservation requirements "encourage all trial

---

[13] As already noted, the State did not seek review of the Court of Criminal Appeals' decision in Bonds and has not contested the Bonds ruling in this appeal.  Rather, the State has argued that Bonds cannot provide a basis for relief because the plain error doctrine as applied in these circumstances focuses on the law existing at the time of trial rather than the time of appeal.  We note that the General Assembly amended the criminal gang offense statute after Bonds to address the constitutional deficiencies identified in that case.  See Tenn. Code Ann. § 40-35-121(b) (Supp. 2017).

- 5 -

participants to seek a fair and accurate trial the first time around" (citation and internal quotation marks omitted)).

## B. Plain Error Doctrine

Despite the laudatory purposes served by appellate review preservation requirements, the plain error doctrine has long been recognized as a necessary exception to these requirements, which affords appellate courts discretion to review unpreserved errors and grant relief when fairness and justice demand. Puckett, 556 U.S. at 135; Olano, 507 U.S. at 732; Knowles, 470 S.W.3d at 423; Bledsoe, 226 S.W.3d at 354; Wayne R. LaFave et al., 7 Criminal Procedure § 27.5(d) (4th ed. & Dec. 2017 Update) ("All but a few jurisdictions recognize the authority of an appellate court to reverse on the basis of plain error even though that error was not properly raised and preserved at the trial level.").[14]  The plain error doctrine in Tennessee was recognized at common law, Bledsoe, 226 S.W.3d at 354, but is now expressed in Tennessee Rule of Appellate Procedure 36(b), which provides, in relevant part:

> When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal.

Tenn. R. App. P. 36(b); see also Knowles, 470 S.W.3d at 423 (discussing Tenn. R. App. P. 36(b)).  As in the federal courts, the plain error doctrine in Tennessee thus functions as an exception to appellate review preservation requirements and "tempers the blow of a rigid application" of such requirements. Young, 470 U.S. at 15.  The plain error doctrine embodies the recognition that a "rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony

---

[14] The United States Supreme Court first articulated the plain error doctrine in Wiborg v. United States, 163 U.S. 632, 658 (1896), noting that the defendants had not properly preserved the issue but stating that if "a plain error was committed in a matter so absolutely vital to defendants, we feel ourselves at liberty to correct it." See also Weems v. United States, 217 U.S. 349, 362 (1910) (asserting the Supreme Court's right to review unpreserved error when it concerns constitutional issues).  The plain error doctrine was subsequently memorialized in Rule 52(b) of the Federal Rules of Criminal Procedure, where it remains virtually unchanged to this day. See Fed. R. Crim. P. 52(b) Advisory Committee Notes to 1944 adoption ("This rule is a restatement of existing law.").  In 1978, the plain error doctrine in this State was incorporated into Rule 52(b) of the Tennessee Rules of Criminal Procedure, which was patterned upon the corresponding federal rule. Id.; see also State v. Crowe, 168 S.W.3d 731, 741 n.3 (Tenn. 2005) (discussing the adoption of the Tennessee Rules of Criminal Procedure).  In 2009, the text of Tennessee Rule of Criminal Procedure 52(b) was moved to Rule 36(b) of the Tennessee Rules of Appellate Procedure, but this move did not alter the parameters of the plain error doctrine. Tenn. R. App. P. 36(b) advisory commission cmt. [2009]; Tenn. R. Crim. P. 52 advisory commission cmt. [2009].

with . . . the rules of fundamental justice." Olano, 507 U.S. at 732 (internal quotation marks omitted). Indeed, Rule 36(b) expressly authorizes an appellate court to consider an error that was not raised either in the trial court or on appeal if consideration of the error is necessary "to do substantial justice" and the error "has affected the substantial rights of a party." Thus, by design the plain error doctrine ensures that "obvious injustice [is] promptly redressed." Young, 470 U.S. at 15 (internal quotation marks omitted); see also Charles Alan Wright, et al., 3B Fed. Prac. & Proc. Crim. § 856 (4th ed. & April 2017 Update) ("Clearly one purpose of the plain error rule is to protect the defendant. If a serious injustice was done it should be remedied.").

On the other hand, appellate courts must "sparingly exercise[]" their authority under the plain error doctrine. Bledsoe, 226 S.W.3d at 354; see also Olano, 507 U.S. at 732; Young, 470 U.S. at 15. This is true because "[t]he premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbitrators of legal questions presented and argued by the parties before them." Nat'l Aeronautics & Space Admin. v. Nelson, 562 U.S. 134, 148 n.10 (2011); see also Bishop, 431 S.W.3d at 44. Only by circumspectly exercising their authority will appellate courts maintain the "careful balance" between appellate review preservation requirements and the plain error doctrine. Young, 470 U.S. at 15.

As in the federal courts, the plain error doctrine in Tennessee "has the unique distinction of being both a standard of review and a multi-pronged test, and the court will grant relief only if each prong of the test is satisfied." Ian S. Speir and Nima H. Mohebbi, Preservation Rules in the Federal Courts of Appeals, 16 J. App. Prac. & Process 281, 285 (2015). Therefore an appellate court in Tennessee may consider an unpreserved error pursuant to the plain error doctrine and grant relief if the defendant establishes the following five criteria: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. Tenn. R. App. P. 36(b); State v. Martin, 505 S.W.3d 492, 504 (Tenn. 2016); State v. Hester, 324 S.W.3d 1, 56 (Tenn. 2010); State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007) ("Gomez II"). If a defendant fails to establish any of these criteria, an appellate court must deny relief under the plain error doctrine, and an appellate court need not consider all criteria when the record demonstrates that one of them cannot be established. Knowles, 470 S.W.3d at 425.

Given the criteria that must be satisfied to obtain relief, the plain error doctrine inherently serves as an incentive for parties to satisfy appellate review preservation requirements. If a defendant properly preserves an issue, an appellate court applies plenary appellate review when evaluating the defendant's entitlement to relief. Griffith 479 U.S. at 328; State v. Gomez, 163 S.W.3d 632, 645 (Tenn. 2005), cert. granted, judgment vacated on other grounds, by Gomez v. Tennessee, 549 U.S. 1190 (2007)

(hereinafter "Gomez I"); see also Knowles, 470 S.W.3d at 423 (applying the plain error doctrine "because the defendant did not properly preserve the election issue for plenary appellate review"); Bishop, 431 S.W.3d at 43–44 (holding that the Court of Criminal Appeals erred by failing to apply the plain error doctrine when it addressed an issue that the defendant had not properly preserved for appeal); State v. Rice, 184 S.W.3d 646, 676 (Tenn. 2006) (recognizing that a defendant who fails to request a jury instruction is precluded from seeking plenary appellate review but may obtain review and relief via the plain error doctrine). Under plenary appellate review, a defendant who alleges a nonstructural constitutional error, like that alleged by the defendant in this case, bears the burden of persuading an appellate court that the non-structural constitutional error occurred. State v. Climer, 400 S.W.3d 537, 569 (Tenn. 2013); see also State v. Rodriguez, 254 S.W.3d 361, 371 (Tenn. 2008) (discussing the three categories of error—structural constitutional error, non-structural constitutional error, and non-constitutional error—and explaining the differing standards appellate courts apply when evaluating each category of error). Once the defendant satisfies this obligation, the appellate court must grant relief on the non-structural constitutional error unless the State then establishes that the non-structural constitutional error was harmless beyond a reasonable doubt. Id. Thus, a defendant who satisfies appellate review preservation requirements regarding an alleged non-structural constitutional error has a lighter burden to bear when seeking relief on appeal than does a defendant who fails to satisfy appellate review preservation requirements for that same claim. This is the difference between plenary appellate review and the plain error doctrine. We turn next to consider whether plenary appellate review rather than the plain error doctrine should apply, despite a defendant's failure to satisfy appellate review preservation requirements, if a defendant's claim of non-structural constitutional error is based on a court decision announced after the defendant's trial but while the defendant's appeal is pending.

### C. Appellate Review Preservation Requirements, the Plain Error Doctrine, and the Retroactive Application of New Rules to Cases Pending on Direct Review

It is undisputed that the defendant failed to challenge the constitutionality of the criminal gang offense statute in the trial court and raised the issue for the first time on appeal based on Bonds, which was decided after the defendant's trial. The defendant nevertheless argues that Bonds applies retroactively to all cases pending on direct review when it was decided, including his, and that appellate courts must evaluate his entitlement to relief under Bonds unconstrained by the plain error doctrine because Bonds constitutes a new rule.[15] The defendant asserts that he is entitled to relief from his

---

[15] In his initial brief, the defendant acknowledged that he had not properly preserved the issue and appeared to agree that his only avenue of obtaining relief on appeal was via the plain error doctrine. However, in his supplemental brief the defendant argued that, because Bonds constituted a new rule, it applies to all cases pending on appeal when it was decided and an appellate court must apply plenary appellate review when evaluating a defendant's entitlement to relief based on Bonds.

convictions and sentences under the unconstitutional statute unless the State establishes that the constitutional error was harmless beyond a reasonable doubt.

The defendant is partially correct. The ruling in <u>Bonds</u> applies to all cases pending on direct review when it was decided. Both the United States Supreme Court and a prior decision of this Court have held that appellate courts apply new constitutional rules retroactively to all cases pending on direct review when the new rule was announced. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 326–28 (1987); <u>Gomez I</u>, 163 S.W.3d at 643.

Nevertheless, the defendant is mistaken in asserting that courts apply new rules retroactively unconstrained by other jurisprudential concepts, like appellate review preservation requirements and the plain error doctrine. To the contrary, decisions of the United States Supreme Court and this Court illustrate that new rules apply retroactively to cases pending on direct review *subject to* appellate review preservation requirements and the plain error doctrine.

For example, the <u>Griffith</u> defendants properly preserved their claim that the prosecutor had engaged in the discriminatory exercise of peremptory challenges at every stage of the proceedings and raised it in the certiorari petition they filed in the Supreme Court, even in the face of controlling precedent unfavorable to their position. <u>Griffith</u>, 479 U.S. at 316–22. While their certiorari petition was pending, the Supreme Court decided <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), which partially abrogated the controlling unfavorable precedent. 476 U.S. at 96–100. About one month later, the Supreme Court granted review of <u>Griffith</u> limited to the question of whether <u>Batson</u> applied retroactively to cases pending on direct review.[16] <u>Griffith</u>, 479 U.S. at 320. The Supreme Court overruled a four-year-old decision[17] that would have precluded applying <u>Batson</u> retroactively to <u>Griffith</u> and held that new rules apply retroactively to all cases pending on direct review. <u>Id.</u> at 326–28. In announcing this principle, however, the Court in <u>Griffith</u> did not discard appellate review preservation requirements or the plain error doctrine. Indeed, the <u>Griffith</u> Court had no occasion to address either concept because, as already explained, the <u>Giffith</u> defendants had properly preserved the <u>Batson</u> issue for plenary appellate review, even in the face of controlling unfavorable precedent. 479 U.S. at 316–22.

---

[16] The <u>Griffith</u> defendants filed their certiorari petition in the direct appellate review process of their convictions, so <u>Griffith</u> does not address the retroactivity of new constitutional rules to cases on collateral review in state or federal habeas or post-conviction proceedings. Like <u>Griffith</u>, this appeal also does not involve the question of whether a new rule applies retroactively in collateral proceedings after a conviction is final. A discussion of that issue may be found in <u>Welch v. United States</u>, __ U.S. __, 136 S. Ct. 1257, 1264–65 (2016) and <u>Bush v. State</u>, 428 S.W.3d 1, 17–20 (Tenn. 2014).

[17] <u>See</u> <u>United States v. Johnson</u>, 457 U.S. 537 (1982) (holding that new rules announcing a "clear break" with prior precedent were not to be applied retroactively to cases pending on direct review).

Moreover, in several other decisions, the United States Supreme Court has emphasized that new rules apply retroactively to cases pending on direct review *subject to* existing jurisprudential concepts such as preservation requirements and the plain error doctrine. See, e.g., Henderson, 568 U.S. at 272 (explaining that "[e]ven where a new rule of law is at issue," the federal circuit courts of appeal may only "overlook a failure to object" if all of the elements of the plain error doctrine are satisfied); Davis v. United States, 564 U.S. 229, 243 (2011) (explaining that "retroactivity jurisprudence is concerned with whether, as a categorical matter, a new rule is available on direct review as a *potential* ground for relief" and stating that Griffith merely lifted "what would otherwise be a categorical bar to obtaining redress for the government's violation of a newly announced constitutional rule"); United States v. Booker, 543 U.S. 220, 268 (2005) (explaining that, when retroactively applying the new constitutional rule it had announced to cases pending on appeal, reviewing courts were "to apply ordinary prudential doctrines, determining, *e.g.*, whether the issue was raised below and whether it fails the 'plain-error' test"); Powell v. Nevada, 511 U.S. 79, 84–85 (1994) (remanding to the state supreme court to apply a new constitutional rule retroactively and consider "the consequences of Powell's failure to raise the federal question"); Shea v. Louisiana, 470 U.S. 51, 58 n.4 (1985) (stating that new rules are to be applied retroactively to cases pending on direct review "subject, of course, to established principles of waiver, harmless error, and the like"); see also Gomez I, 163 S.W.3d at 644–45 ("Where, as here, a new rule is announced while a criminal case is pending on direct review, . . . [a] criminal defendant who has failed to properly preserve the relevant issue is limited to seeking relief via plain error review."). The defendant's argument that appellate courts must utilize plenary appellate review when applying new rules retroactively to cases pending on direct review, unconstrained by preservation requirements or the plain error doctrine, is thus without merit.

On the other hand, as the foregoing discussion also illustrates, the State is mistaken in arguing that new rules do not apply at all to cases pending on direct review if appellate review preservation requirements are not satisfied. We reiterate that the failure to satisfy appellate review preservation requirements does not preclude the application of new rules to cases pending on appeal. Rather, it means that an appellate court uses the plain error doctrine, instead of plenary appellate review, when applying the new rule and evaluating the defendant's entitlement to relief. Gomez I, 163 S.W.3d at 645.

It is true, as the State points out, that in State v. Cecil, 409 S.W.3d 599, 608 (Tenn. 2013), this Court utilized plenary appellate review when applying the new rule announced in State v. White, 362 S.W.3d 559 (Tenn. 2012). But we did so because Cecil was pending on appeal when White was decided *and* because the defendant in Cecil had properly preserved his challenge to the sufficiency of the evidence—the issue to which White related. Cecil, 409 S.W.3d at 604 (stating that on appeal to the Court of Criminal Appeals, the defendant in Cecil "challenged the sufficiency of the evidence"). Like the State, the Court of Criminal Appeals has misunderstood Cecil as holding that an appellate

court must employ plenary appellate review when applying a new rule to cases pending on appeal, even if a defendant fails to comply with appellate review preservation requirements. See State v. Turner, No. E2016-00790-CCA-R3-CD, 2017 WL 1379999, at *7 (Tenn. Crim. App. Apr. 13, 2017); State v. Byars, No. W2016-00005-CCA-R3-CD, 2017 WL 758517, at *17 (Tenn. Crim. App. Feb. 27, 2017). This understanding is incorrect; thus, Turner and Byars are overruled on this point.

Accordingly, we hold that appellate courts must apply new rules retroactively to cases pending on direct review when the new rule is announced but must do so subject to existing jurisprudential principles, such as appellate review preservation requirements and the plain error doctrine. Thus, if a defendant fails to comply with appellate review preservation requirements, an appellate court must utilize the plain error doctrine rather than plenary appellate review when applying a new rule.

### D. Relief under the Plain Error Doctrine

Here, the defendant failed to satisfy appellate review preservation requirements, so we apply the plain error doctrine to determine his entitlement to relief on his constitutional challenge to the criminal gang offense statute. The defendant may obtain relief only if all the following criteria are satisfied: (1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the issue was not waived for tactical reasons, and (5) consideration of the error is necessary to do substantial justice. Martin, 505 S.W.3d at 504; Hester, 324 S.W.3d at 56.

#### 1. Does the record clearly establish what occurred in the trial court?

The first criterion is satisfied. Although the appellate record lacks a transcript of the sentencing hearing, it is undisputed that the defendant's effective sentence was enhanced under the criminal gang offense statute by at least ten years and that some of his conviction offenses were elevated one classification beyond that established by the statutes creating the offenses.

#### 2. Was a clear and unequivocal rule of law breached?

The defendant's satisfaction of the second criterion—whether a clear and unequivocal rule of law was breached—is the real issue in this appeal. The parties disagree on whether this question should be answered based on the law existing at the time of trial or the law existing at the time of appeal.

The United States Supreme Court first acknowledged this issue in United States v. Olano, where it held that an error is not "plain" for purposes of the plain error doctrine of Federal Rule of Criminal Procedure 52(b) "unless the error is clear under current law."

507 U.S. at 734. In <u>Olano</u>, however, the law at the time of appeal was the same as the law at the time of trial. <u>Id.</u> The <u>Olano</u> Court therefore declined to "consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified." <u>Id.</u>

Four years later, in <u>Johnson v. United States</u>, 520 U.S. 461 (1997), the Supreme Court considered a case in which the law had changed between the time of trial and direct appellate review. 520 U.S. at 464. Under settled appellate precedent existing at the time of the perjury trial in <u>Johnson</u>, the judge rather than the jury decided the question of materiality. <u>Id.</u> Not surprisingly, given the controlling precedent on the issue, Johnson did not object to the judge deciding materiality and actually argued, when objecting to the prosecution's presentation of evidence relevant to materiality, that it was an issue for the judge and not the jury. <u>Id.</u>

After Johnson's conviction but before her appeal, the Supreme Court ruled in another case that the Sixth Amendment guarantees criminal defendants the right to a jury determination, beyond a reasonable doubt, on the element of materiality in a perjury prosecution. <u>Johnson</u>, 520 U.S. at 464 (discussing <u>United States v. Gaudin</u>, 515 U.S. 506, 522–23 (1995)). On appeal Johnson relied on <u>Gaudin</u> and argued that the trial court's failure to submit the issue of materiality to the jury rendered her conviction invalid. <u>Johnson</u>, 520 U.S. at 464. Before the Supreme Court, the government in <u>Johnson</u> argued that the plain error doctrine applied only to errors "plain" both at the time of trial and at the time of appellate review. <u>Id.</u> at 467–68. The <u>Johnson</u> Court rejected this argument, holding instead that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal . . . it is enough that an error be 'plain' at the time of appellate consideration." <u>Id.</u> at 468.

This Court adopted and applied the <u>Johnson</u> rule in <u>Gomez I</u>, holding that when the law changes between the time of trial and appeal, the question of "[w]hether an error is 'plain' or 'obvious' is determined by reference to the law existing as of the time of appellate consideration." 163 S.W.3d at 653–54 (citing <u>Johnson</u>, 520 U.S. at 468).

More recently, in <u>Henderson v. United States</u>, the Supreme Court decided the issue reserved in <u>Olano</u>—what law must an appellate court reference when the law was unsettled at the time of trial but settled by the time of appeal. 568 U.S. at 273. There, the district court imposed an upward departure sentence to make Henderson eligible to participate in a rehabilitation program, and Henderson did not object to the increased sentence. <u>Id.</u> at 269. While Henderson's case was pending on appeal, the United States Supreme Court decided in another case[18] that district courts lacked authority to impose upward departure sentences to create eligibility for rehabilitation programs. <u>Id.</u> at 270.

---

[18] <u>Tapia v. United States</u>, 564 U.S. 319 (2011).

Henderson challenged his upward departure sentence on appeal, relying on the intervening Supreme Court decision.  Id.

The Fifth Circuit declined to grant Henderson relief via the plain error doctrine, explaining that the error was not "plain" when the district court imposed the sentence because circuit courts of appeal that had addressed the issue were divided and the Court of Appeals for the Fifth Circuit, where Henderson was sentenced, had not addressed the issue.  Id. The Supreme Court granted review, and in a six-to-three decision, ruled that whether the law "was settled or unsettled at the time of trial," an appellate court must reference the law "'at the time of appellate consideration'" when determining whether a plain error has occurred.  Id. at 279 (quoting Johnson, 520 U.S. at 468).  The Supreme Court in Henderson thus extended Johnson and adopted a single standard, requiring appellate courts to reference the law at the time of appeal when applying the plain error doctrine under all circumstances—not the law at the time of trial.  Id.

The Henderson Court reasoned that assessing the error at the time of appellate review advances the general rule "'that an appellate court must apply the law in effect at the time it renders its decision.'"  Id. at 271 (quoting Thorpe v. Hous. Auth. of Durham, 393 U.S. 268, 281 (1969)).  The Supreme Court noted that its ruling was not novel and had been endorsed by Chief Justice Marshall long ago, who wrote:

> "It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. *But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied . . . .*  In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside."

Id. (quoting United States v. Schooner Peggy, 5 U.S. (1 Cranch) 103, 110 (1801) (emphasis added)).

The Henderson Court explained that assessing error based on the law at the time of appeal is consistent with the purpose of the plain error doctrine as a fairness-based exception and avoids treating similarly situated defendants differently.  Id. at 276.  The Court explained:

> If the . . . words "plain error" cover both (1) trial court decisions that were plainly correct at the time when the judge made the decision and (2) trial court decisions that were plainly *incorrect* at the time when the judge made the decision, then why should they not also cover (3) cases in the middle—

*i.e.*, where the law at the time of the trial judge's decision was neither clearly correct nor incorrect, but unsettled?

To hold to the contrary would bring about unjustifiably different treatment of similarly situated individuals. Imagine three virtually identical defendants, each from a different circuit, each sentenced in January to identical long prison terms, and each given those long sentences for the same reason, namely to obtain rehabilitative treatment. Imagine that none of them raises an objection. In June, the Supreme Court holds this form of sentencing unlawful. And, in December, each of the three different circuits considers the claim that the trial judge's January-imposed prison term constituted a legal error. Imagine further that in the first circuit the law in January made the trial court's decision clearly lawful as of the time when the judge made it; in the second circuit, the law in January made the trial court's decision clearly unlawful as of the time when the judge made it; and in the third circuit, the law in January was unsettled.

To apply [the] words "plain error" as of the time of appellate review would treat all three defendants alike . . . . To interpret "plain error" differently, however, would treat these three virtually identical defendants differently, allowing only the first two defendants, but not the third defendant, potentially to qualify for [plain error] relief. All three defendants suffered from legal error; all three failed to object; and all three would benefit from the new legal interpretation. What reason is there to give two of these three defendants the benefits of a new rule of law, but not the third?

There is no practical ground for making this distinction. To the contrary, to distinguish and treat more harshly cases where a circuit's law was unclear would simply promote arguments about *whether* the law of the circuit initially was unclear (rather than clearly settled one way or the other). And these arguments are likely to be particularly difficult to resolve where what is at issue is a matter of legal degree, not kind. To what extent, for example, did a prosecutor's closing argument go *too far* down the road of prejudice? A "time of error" interpretation also would require courts of appeals to play a kind of temporal ping-pong, looking at *the law that now is* to decide whether "error" exists, looking at *the law that then was* to decide whether the error was "plain," and looking at *the circumstances that now are* to decide whether the defendant has satisfied Olano's third and fourth criteria. Thus, the "time of error" interpretation would make the appellate process yet more complex and time consuming.

Henderson 568 U.S. at 273–75 (internal citations omitted). The Henderson Court rejected the government's assertion that its holding would undercut the "competing administrative principle that insists that counsel call a potential error to the trial court's attention," and colorfully explained that, "[i]f there is a lawyer who would deliberately forgo objection *now* because he perceives some slightly expanded chance to argue for 'plain error' *later,* we suspect that, like the unicorn, he finds his home in the imagination, not the courtroom." Id. at 276. The Henderson Court also rejected the government's argument that its holding would undercut the integrity of trials by providing relief for errors that would not have been plain to the trial court, explaining that the plain error doctrine "is not a grading system for trial judges. It has broader purposes, including . . . allowing courts of appeals better to identify those instances in which the application of a new rule of law to cases on appeal will meet the demands of fairness and judicial integrity." Id. at 278 (citing Johnson, 520 U.S. at 467–68; Olano, 507 U.S. at 732).

In the order granting the defendant's application for permission to appeal, this Court expressed particular interest in the parties' briefing and arguing the question of what effect, if any, Henderson has on this appeal. The parties addressed this issue in their briefs and during oral argument, and both parties acknowledged at oral argument that this case may be decided under Johnson without the necessity of adopting or rejecting Henderson. After careful consideration of Olano, Johnson, and Henderson, this Court concludes that we need go no farther than Johnson to resolve this appeal. The law at the time of the defendant's trial concerning the constitutionality of the criminal gang offense statute cannot be characterized as unsettled. Rather, the issue was simply undecided because no court had addressed it. Given the absence of a court ruling on the constitutionality of the criminal gang offense statute and the presumption of constitutional validity courts ordinarily afford statutes, State v. Pickett, 211 S.W.3d 696, 700 (Tenn. 2007) (quoting Gallaher v. Elam, 104 S.W.3d 455, 459 (Tenn. 2003)), the circumstances of this case lie somewhere between Johnson and Henderson but resemble slightly more closely those of Johnson, where the law changed between the time of trial and the time of appeal, than those of Henderson. Thus, we decline to reject or adopt Henderson in this appeal.

Consistently with Johnson, which this Court adopted in Gomez I, we determine whether on these facts a clear and unequivocal rule of law was breached by reference to the law now existing, i.e., the law at the time of appellate consideration. The Court of Criminal Appeals' decision in Bonds declaring the criminal gang offense statute unconstitutional constitutes the law now existing. The State neither sought review of Bonds nor defended the constitutionality of the statute in this appeal. Accordingly, based on the law now existing, the defendant's convictions and enhanced sentencing under the

unconstitutional criminal gang offense statute violate a clear and unequivocal rule of law.[19]

### 3. Was a substantial right of the accused adversely affected?

The defendant has also established that this plain error adversely affected a substantial right. The record on appeal demonstrates that the defendant's effective sentence was enhanced by at least ten years based on an unconstitutional statute. The defendant's liberty interest—a substantial right to be sure—has been adversely affected by his convictions and enhanced sentencing under the unconstitutional statute.

### 4. Did the accused waive the issue for tactical reasons?

Nothing in the record indicates that the defendant waived his challenge to the constitutionality of the statute for tactical reasons. Nor has the State suggested any tactical advantage the defendant would have gained by failing to raise the issue in the trial court. Thus, this criterion has been satisfied.

### 5. Is consideration of the error necessary to do substantial justice?

The State argues that consideration of the error is not necessary to do substantial justice because the defendant "has over sixty-one years of sentence that gang enhancement did not impact." Furthermore, says the State, the basis on which Bonds declared the statute unconstitutional—its failure to require the prosecution to prove a nexus between gang membership and the crimes committed—is "more theoretical than real" as applied to the defendant's case. The State asserts that the proof at the defendant's trial, including the defendant's admission that he went to Mr. Swift's apartment on the orders of a gang leader, overwhelmingly established a nexus between the defendant's crimes and his gang membership, even though the statute did not require the prosecution to prove the nexus. Finally, the State posits that consideration of the error is not necessary to do substantial justice because the defendant "may have a potential avenue of post-conviction relief available to him to vindicate his constitutional rights."

We disagree with the State and conclude that consideration of the error is necessary to do substantial justice. Regardless of the sixty-one-year sentence, the defendant's effective sentence was enhanced by *ten* additional years based on an unconstitutional statute. Furthermore, the constitutional defect was not cured or

---

[19] The State argues that no error was plain at the time of the defendant's appeal before the Court of Criminal Appeals because the unpublished decision in Bonds constituted only persuasive and nonbinding authority. Both of the foundational premises for the State's assertion are moot. We are *now* determining whether a plain error occurred, and the decision of the Court of Criminal Appeals in Bonds is *now* published.

mitigated by the proof at trial, as the State argues. This is true because, while the defendant admitted going to the apartment at the direction of a gang member on the pretext of buying marijuana, he only admitted to being a scout and denied participating in the crimes that occurred. Even more importantly, the jury was not required to determine whether the prosecution had established beyond a reasonable doubt a nexus between the defendant's gang membership and the crimes. Finally, the potential availability of relief on collateral review does not curtail the authority of appellate courts to grant relief on direct review via the plain error doctrine. Indeed, where the defendant has established all the criteria necessary for obtaining relief via the plain error doctrine, denying relief because a post-conviction remedy may be available would merely delay justice, and justice delayed is justice denied. State v. Blackstock, 19 S.W.3d 200, 213 (Tenn. 2000) ("We have reversed the conviction and sentence, and the remedy is a new trial and sentencing. In this case, however, where the defendant has served his entire sentence, the prospect of a new trial is of dubious practical value and unlikely to be in the interest of the defendant, the victim, or the public as a whole. In short, the criminal justice system has failed in this case, and justice delayed has been justice denied."). We conclude that the defendant has established the criteria necessary to obtain relief under the plain error doctrine, and we exercise our authority to grant relief.

## IV. Conclusion

For the reasons stated herein, we conclude that new rules apply retroactively to cases pending on direct review but do so subject to other jurisprudential concepts, such as appellate review preservation requirements and the plain error doctrine. Because the defendant has established his entitlement to relief via the plain error doctrine, the defendant's convictions under the criminal gang offense statute are vacated, and this matter is remanded to the trial court for resentencing in accordance with the sentencing classification ranges established by the specific statutes creating the offenses, without any classification or sentence enhancement pursuant to the criminal gang offense statute. Costs of this appeal are taxed to the State of Tennessee.

_____
CORNELIA A. CLARK, JUSTICE