IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 7, 2019

**CHRISTOPHER MINOR v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-18-187     Roy B. Morgan, Jr., Judge**

**No. W2018-02073-CCA-R3-PC**

The petitioner, Christopher Minor, appeals the denial of his petition for post-conviction relief, which petition challenged his Madison County Circuit Court jury convictions of felony murder, aggravated robbery, aggravated burglary, aggravated assault, and employing a firearm during the commission of a dangerous felony. In this appeal, the petitioner reiterates his claim that he was deprived of the effective assistance of counsel. Because the petitioner has failed to establish that he is entitled to post-conviction relief, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Christopher Minor.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Madison County jury convicted the petitioner of two counts of felony murder, two counts of aggravated robbery, one count of aggravated burglary, one count of aggravated assault, one count of being a convicted felon in possession of a handgun, one count of employing a firearm during the commission of a dangerous felony, one count of employing a firearm during the commission of a dangerous felony after having been previously convicted of a dangerous felony, and seven counts of violating the criminal gang enhancement statute. *See State v. Minor*, 546 S.W.3d 59, 63 (Tenn. 2018). On appeal, this court affirmed the petitioner's convictions and sentences, but our supreme

court vacated the petitioner's convictions for violating the criminal gang enhancement statute based upon this court's declaring that statute unconstitutional and remanded the case for resentencing. *See id.* at 75.[1]

Our supreme court summarized the petitioner's case as follows:

On June 8, 2014, Christopher Minor, a member of the Black P-Stone Nation criminal gang, and another gang member went to an apartment Rico Swift shared with his girlfriend, Julie Frye, on the pretext of buying marijuana. They were acting on orders from a gang leader to rob Mr. Swift, and other gang members were waiting just outside the apartment. The two men entered the apartment, and, when Mr. Swift turned his back to retrieve the marijuana, they attacked him, punching and choking him. During the assault, the other gang members entered the apartment. According to Ms. Frye, the men choked Mr. Swift until his legs "started jumping" and he turned blue. When Ms. Frye attempted to leave the room to grab a knife to assist Mr. Swift, the [petitioner] followed her and struck her with a gun, knocking her unconscious. By the time Ms. Frye regained consciousness, the assailants were gone, but Mr. Swift was lying on the sofa, unconscious and badly injured in a pool of his own blood. Emergency personnel were summoned, but Mr. Swift died from the injuries he sustained. Ms. Frye later discovered that the assailants had also stolen items from her purse.

Days later, police investigators linked the [petitioner] to the crime. They showed Ms. Frye a photographic array, and she identified the [petitioner] as the person who beat Mr. Swift and knocked her unconscious. When the officers questioned the [petitioner], he admitted being present at Mr. Swift's apartment, but he denied any involvement in assaulting Mr. Swift or Ms. Frye. According to the [petitioner], he was simply a scout and left the apartment and advised the gang members waiting outside not to go through with the planned robbery because Mr. Swift was not alone.

---

[1] None of the judgments, amended or otherwise, were included in the record on appeal. The petitioner testified at the evidentiary hearing that the trial court reduced his sentence by 10 years on remand. He described his current effective sentence as "life plus 10" years.

The [petitioner] admitted accepting his share of the proceeds from the robbery, however, explaining that he would have been disciplined by the gang had he refused.

*Minor*, 546 S.W.3d at 62-63.

On August 2, 2018, the petitioner filed a timely petition for post-conviction relief, alleging, among other things, that he was deprived of the effective assistance of counsel at trial. Specifically, the petitioner claimed that his counsel performed deficiently by failing to adequately prepare for trial, failing to investigate potential defenses, failing to prepare the petitioner to testify at trial, and by failing to employ a crime scene reconstructionist.

At the October 9, 2018 evidentiary hearing, the petitioner testified that counsel "took over" the case in July 2015 and, shortly thereafter, reported to the petitioner that the State had made a plea offer that included a 35-year sentence. The petitioner said that he rejected the offer and elected to go to trial. The petitioner testified that counsel did not file a motion for discovery materials and visited him on only two occasions for a total of less than 15 minutes prior to the September 2015 trial. The petitioner said that he wrote to counsel and asked him to file a motion to suppress the statement that the petitioner provided to the police and for a psychological evaluation, and counsel told him that "it was too late 'cause we was going to trial." The petitioner stated that the statement should have been suppressed because he "had got shot in the head three days before" he gave the incriminating statement and "was on medicine." He said that after counsel took over the case, he did not get to view his "gang pictures" and did not get to hear the 9-1-1 recording until the day of trial. He said that those were the only items that he and counsel "didn't go over and didn't see."

The petitioner testified that counsel "wasn't properly prepared 'cause he only had [the] case for a month and maybe two or three weeks before us even going to trial." He insisted that counsel "knew nothing about the case" and that he and trial counsel "never even sat down long enough to help [counsel] learn about [the] case as a lawyer." The petitioner said that he wanted counsel to obtain medical records for Ms. Frye and to hire a DNA expert. He acknowledged, however, that no DNA evidence was discovered at the scene or adduced at trial.

During cross-examination, the petitioner acknowledged that counsel appealed the case to our supreme court and that the appeal resulted in the reversal of his gang enhancement convictions and a reduction of his sentence. He stated, however, that he was "not good with" the outcome of the appeal despite the sentence reduction. The petitioner conceded that he had testified at trial and that, during his testimony, he had

acknowledged having gone to Mr. Swift's apartment with other gang members for the purpose of robbing Mr. Swift. The petitioner acknowledged that he and counsel discussed the petitioner's testifying at trial.

The petitioner conceded that he was aware before trial of the bulk of the evidence that would be presented at trial but reiterated that he was unaware of "[t]he gang pictures" prior to trial. He acknowledged that he was in a gang but said that he did not "know they were gonna bring that up" at his trial. He clarified that he knew that his gang membership would be an issue at trial because he was charged with a violation of the criminal gang enhancement statute but insisted that "[t]he indictment never said anything about no pictures." He admitted that the information about his gang participation was not presented to the jury until the second half of the bifurcated proceeding.

The petitioner conceded that he knew that Ms. Frye had suffered brain injuries during the attack and that he had learned this information from the discovery materials. He said that he did not receive the discovery materials from counsel. The petitioner admitted that he knew that the 9-1-1 call was "out there" but that he had not received a copy of the recording.

Counsel testified "that there was another attorney involved" prior to his being appointed to the petitioner's case, but he could not recall the name of the other attorney. He said that the previous attorney had engaged in negotiations with the State that he "was not privy to" but that resulted in the 35-year offer described by the petitioner. Counsel said that he advised the petitioner to accept the offer "because of the confession."

Counsel testified that, contrary to the petitioner's assertion, he met with the petitioner several times after the petitioner made the decision to go to trial because "it became clear that in order for us to mount the defense that we determined was most likely to succeed, he would have to testify." Counsel said that he "spent time with [the petitioner] . . . preparing him to testify and trying to prepare him for the cross-examination that he would be subjected to." Counsel said that the defense "theory was that [the petitioner] withdrew from the conspiracy" to rob Mr. Swift.

Counsel could not recall whether he had filed a motion for discovery but said that "there was no additional discovery in the file that was for him except for those pictures, and I did provide those pictures." He maintained that he knew that he had received all the discovery materials and said that they "may have been from the prior counsel." He added that he had reviewed "the District Attorney's file in the days immediately preceding" the petitioner's trial to ensure that he had "all items that were

going to be presented." Counsel said that the petitioner "had been furnished all discovery materials" even though counsel had not himself "furnished those materials."

During cross-examination, counsel said that the petitioner had at least one other attorney before he was appointed to represent the petitioner and that, by the time he was appointed to the case, "at least one prior counsel had provided the petitioner with discovery." He said that he did not file an additional motion for discovery because all of the discovery materials had already been disclosed. He added that the Madison County District Attorney's Office had an "open discovery policy which means that attorneys are allowed full access to make copies of anything that's in the file." Counsel said that he took advantage of that policy. Counsel said that nothing from his interactions with the petitioner indicated that the petitioner had a mental deficiency that affected his ability to provide a voluntary statement to the police and to fully participate in the trial.

Counsel could not recall discussing with the petitioner the filing of a request for a psychological evaluation. He did recall discussing the petitioner's request that he file a motion to suppress, saying, "[I]n my professional opinion, there was no basis for a motion to suppress." Counsel said that he did obtain some medical records for Ms. Frye and that he went over the records with the petitioner but could not give the petitioner a copy of the records "[b]ecause of HIPAA restrictions and others." Counsel said that he used the records to question Ms. Frye "about her mental capacity during the trial."

At the conclusion of the hearing, the post-conviction court accredited counsel's testimony that he met with the petitioner several times, developed a reasonable defense strategy, and prepared the petitioner to testify at trial. The court also accredited counsel's testimony that the petitioner had received all the discovery materials and determined that counsel did not perform deficiently by failing to file a motion for discovery given that all the discovery materials had already been provided to counsel and that the district attorney's office maintained an open file policy. The court concluded that the petitioner had failed to present evidence to contradict counsel's assessment that there was "no legal basis for suppression of the statement." The court accredited counsel's testimony that nothing about the petitioner's behavior suggested that a psychological evaluation was necessary and specifically determined that the petitioner "had no issue in communication" during the evidentiary hearing. The post-conviction court concluded that counsel did not perform deficiently by failing to provide the petitioner with Ms. Frye's medical records when counsel "did use those records for purposes of cross-examination during the course of trial." The court held that the petitioner had failed to carry his burden of establishing by clear and convincing evidence facts to support his claims of ineffective assistance of counsel.

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, arguing that counsel performed deficiently by failing to file motions for discovery, to suppress his statement, and for a psychological evaluation; failing to meet with the petitioner a sufficient number of times; and failing to adequately prepare for trial.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision

-6-

made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Here, the petitioner has failed to carry his burden to prove by clear and convincing evidence sufficient facts to support his claim that counsel performed deficiently. Counsel's accredited testimony established that, although he did not file a motion for discovery, he received all of the discovery materials and thoroughly reviewed all discovery materials with the petitioner. Counsel's testimony also established that he adequately communicated with the petitioner in preparation for trial, and the petitioner could point to no specific item of evidence, witness, or legal argument that counsel might have presented after further preparation. Counsel testified that there was no legal basis to move for suppression of the petitioner's statement, and the petitioner presented no evidence to suggest otherwise. Although the petitioner testified that he had been shot in the head only days before providing the statement and "was on medicine," he presented no evidence detailing the severity of his injury, the character of the medication prescribed to him, or the potential effect of either the injury or the medication on the petitioner's ability to provide a voluntary statement to the police.

Accordingly, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE