IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 24, 2019 Session

## STATE OF TENNESSEE v. JONATHAN COOPER

**Appeal from the Criminal Court for Knox County**
No. 108334     Steven W. Sword, Judge

___

### No. E2018-00622-CCA-R3-CD

___

The Defendant, Jonathan Cooper, was indicted for two counts of aggravated sexual battery, a Class B felony; five counts of incest, a Class C felony; and five counts of rape of a child, a Class A felony. See Tenn. Code Ann. §§ 39-13-504, -13-522, -15-302. Following a jury trial, the Defendant was convicted of one count of aggravated sexual battery, three counts of incest, and three counts of rape of a child. The Defendant was acquitted of the remaining charges. The trial court later imposed a total effective sentence of fifty years. On appeal, the Defendant contends that (1) the evidence was insufficient to sustain his convictions; and (2) the trial court erred in allowing a witness to testify that he observed the victim crying during a forensic interview. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Joshua Hedrick, Knoxville, Tennessee, for the appellant, Jonathan Cooper.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Nathaniel Ross Ogle, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

The victim, F.C.,[1] testified that she was born in May 2004 and that the Defendant is her father. Initially, the Defendant lived with his parents, the victim's grandparents, and he had custody of her "every weekend." The victim testified that she would stay with the Defendant in his bedroom where she had a small bed to herself.

The victim testified that one night, when she was "[a]bout nine" and in the fourth grade, the Defendant closed the door to his bedroom and told her to come to his bed. The Defendant then "started touching [her] private parts" over her clothing. The victim explained that her "private parts" were her "[b]oobs and vagina." When he was finished, the Defendant told the victim to go back to her bed. The victim testified that she did not tell anyone about this because she "was scared." According to the victim, this happened "[l]ike three or four times." During these incidents, the Defendant would instruct the victim to take off her clothes and touch his penis. The victim recalled an incident at her grandparents' house when the Defendant "put his penis in [her] mouth and kissed and licked [her] privates."

The victim testified that around the time she turned ten and started the fifth grade, the Defendant got married and moved into an apartment with his wife. The Defendant and his wife had a baby, N.C.,[2] in June 2014. The victim testified that she shared a bedroom with her baby brother when she stayed with the Defendant.

The victim recalled that, late one night, the Defendant entered her bedroom and took her baby brother out of the room. The Defendant returned to the room without the baby, he shut the door, took off his clothes, and took off the victim's clothes. The victim testified that the Defendant then started "kissing and touching" her "vagina and boobs." The victim testified about another incident when the Defendant took her baby brother out of the bedroom, came back without the baby, took off both of their clothes, and "[p]ut his penis in [her] mouth and was touching and licking [her] private." When he finished, the Defendant had her put on her clothes and go back to bed.

The victim testified that the final incident occurred at the Defendant's apartment when she was eleven. On that night, the Defendant penetrated her vagina with his penis. The victim testified that the Defendant was "[g]oing back and forth" with his penis for "a short amount of time" before the Defendant "took his penis out of [her] vagina and put white stuff on [her] stomach." The Defendant then put his clothes on, took the victim to a bathtub, and "washed it off." The victim testified that she dried off, dressed, and went back to bed.

---

[1] It is the policy of this court to refer to victims of sexual offenses by their initials.
[2] It is the policy of this court to refer to juveniles by their initials.

After the last incident, the Defendant and his wife moved from their apartment to a house. The victim testified that she "waited for a little bit after [the Defendant] moved into his new house" to tell her mother because she was "nervous about what they were gonna say and still scared." In November 2015, the victim told her mother about what the Defendant had done. The victim explained that she "didn't want it to happen any longer."

The victim testified that no one had told her what to say, that her testimony was the truth, and that what she had testified to had really happened. The victim testified that she did not sleep in a separate bedroom at her grandparents' house when these incidents occurred. The victim clarified that she only slept in a separate bedroom at her grandparents' house "after this like quit." Additionally, the victim was inconsistent about when the last incident took place. The victim initially testified that it occurred during the summer, after school had ended for the year. The victim then testified that it occurred before her birthday in May, maybe in April, but before school had ended for the year. It was stipulated that the victim stated during her forensic interview that the last incident occurred at the "end of summer, 2015."

The victim's mother, A.L.,[3] testified that she noticed that the victim had become "really withdrawn" from the time she was nine until she reported the abuse when she was eleven. A.L. explained that this was especially noticeable when she would pick the victim up from her weekend visitations with the Defendant. However, A.L. admitted that the victim was not "withdrawn" at every pick up.

Knoxville Police Department Investigator Shaun Sakovich testified that he observed the victim during her forensic interview and that she "cried for an extended period of time" during the interview.

The Defendant's father testified that the victim would sleep in his and his wife's bed when she stayed at their house for the victim's visitations with the Defendant. The Defendant's father testified that they placed a toddler bed for the victim in the Defendant's bedroom in 2008. However, she continued to sleep in their bedroom with him and his wife. According to the Defendant's father, in 2010, they removed the toddler bed and placed a futon in a separate bedroom for the victim. The Defendant's father testified that the victim never actually slept on the futon. Instead, she continued to sleep in his bedroom with him and his wife. The Defendant's father also testified that he had never known the victim to lie. The Defendant's sister testified similarly about the sleeping arrangements at the Defendant's parents' house.

---

[3] We will refer to the victim's mother by her initials to protect the privacy of the victim.

The Defendant's wife confirmed that the victim and N.C. shared a bedroom in their apartment. The Defendant's wife testified that N.C. "was a very fussy and clingy newborn," who did not sleep well and was up "every two to three hours." The Defendant's wife also testified that she had no indication that there was anything "unusual going on" at their apartment.

The Defendant's mother-in-law, who lived with the Defendant and his wife in their apartment for several months, testified that she never noticed anything unusual when she lived with them.

The Defendant denied touching the victim "inappropriately." The Defendant denied ever penetrating the victim's vagina or engaging in any sex acts with her. The Defendant claimed that the victim never slept in his bedroom when he lived at his parent's house. The Defendant also claimed that he had never been alone with the victim, except for possibly being in a car alone.

Based upon the foregoing, the jury acquitted the Defendant of all the charges that the victim testified had occurred at the Defendant's parents' house. The jury convicted the Defendant of all charges that the victim testified had occurred at the Defendant's apartment: one count of aggravated sexual battery, three counts of incest, and three counts of rape of a child. The trial court later imposed a total effective sentence of fifty years. The Defendant now appeals to this court.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his convictions. The Defendant argues that the victim was "not credible" as a witness. Chiefly, the Defendant argues that the jury rejected the victim's "story regarding the events at her grandparents' house." The Defendant also argues that the victim was inconsistent in her statements about when the last incident occurred and that her testimony about the Defendant's taking N.C. out of the bedroom prior to sexually abusing her "strains belief." The State responds that the evidence was sufficient to sustain the Defendant's convictions.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence, rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the

evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Both "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

Rape of a child "is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim was more than three . . . years of age but less than thirteen . . . years of age." Tenn. Code Ann. § 39-13-522. Sexual penetration "means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" Tenn. Code Ann. § 39-13-501(7). As charged here, incest is sexual penetration of a person while knowing that the person is the defendant's child. Tenn. Code Ann. § 39-15-302(a)(1).

As charged to the jury, aggravated sexual battery "is unlawful sexual contact with a victim by the defendant or the defendant by a victim" when "[t]he victim is less than thirteen . . . years of age." Tenn. Code Ann. § 39-13-504(a)(4). Sexual contact

> includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other

person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

Tenn. Code Ann. § 39-13-501(6). Intimate parts include "semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2).

It has long been held in Tennessee that "the testimony of a victim, by itself, is sufficient to support a conviction." State v. Bonds, 189 S.W.3d 249, 256 (Tenn. Crim. App. 2005) (internal quotation marks omitted) (quoting State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)). Here, the victim testified that the Defendant, who is her father, "kiss[ed] and touch[ed]" her "vagina and boobs," "[p]ut his penis in [her] mouth," "lick[ed]" her vagina, and penetrated her vagina with his penis. This testimony established the elements of all the offenses the Defendant was convicted of.

The Defendant relies on the fact that the jury acquitted him of all of the charges alleged to have occurred at his parents' house to argue that the victim's testimony was not credible; therefore, the evidence was insufficient. However, the jury was free to reject some portions of the victim's testimony while accepting others. State v. Bolin, 922 S.W.2d 870, 875 (Tenn. 1996) (holding that juries are "free to believe only part of a witness' testimony"). The Defendant's arguments about the discrepancies in the victim's statements and the believability of her testimony regarding N.C. are arguments of witness credibility, conflicts in testimony, and the weight and value to be given to evidence that were resolved by the jury. See Bland, 958 S.W.2d at 659. We will not reweigh the evidence or disturb the jury's determinations on appeal. Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's convictions.

## II. Relevance of the Victim's Demeanor

The Defendant contends that the trial court erred in allowing Investigator Sakovich to testify that he observed the victim crying during her forensic interview. The Defendant argues that this evidence was not relevant, especially in light of the fact that the jury was able to view the victim's demeanor while she testified at trial. The Defendant also argues that the probative value of Investigator Sakovich's testimony was substantially outweighed by the danger of unfair prejudice. The State responds that the trial court did not abuse its discretion in admitting Investigator Sakovich's testimony.

Defense counsel objected at the start of Investigator Sakovich's testimony and argued that any testimony regarding the victim's demeanor during her forensic interview was not relevant. The trial court overruled defense counsel's objection. Investigator Sakovich then testified that he observed "worry" and "regret" from the victim during her

forensic interview and that "[s]he cried for an extended period of time." Defense counsel renewed his objection. The trial court ruled that Investigator Sakovich could not testify that the victim experienced "worry" and "regret" during her forensic interview and ordered the jury to disregard that testimony. However, the trial court ruled that the jury could consider Investigator Sakovich's testimony that the victim cried during her forensic interview.

Tennessee Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, relevant evidence is admissible, while irrelevant evidence is inadmissible. Tenn. R. Evid. 402. However, relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice." Tenn. R. Evid. 403. The admissibility of evidence pursuant to these rules "is a matter within the trial court's discretion and will not be reversed on appeal absent an abuse of that discretion." State v. Biggs, 218 S.W.3d 643, 667 (Tenn. Crim. App. 2006) (citing State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997)).

"A witness's credibility is always relevant." State v. Darrell Wayne Syler, No. E2003-02626-CCA-R3-CD, 2004 WL 2039809, at *2 (Tenn. Crim. App. Sept. 13, 2004). Moreover, "the credibility of the victim plays [a unique role] in many sexual crimes." State v. Wyrick, 62 S.W.3d 751, 772 (Tenn. Crim. App. 2001). Here, Investigator Sakovich's testimony that the victim cried during her forensic interview was relevant to her credibility as a witness. See State v. Caughron, 855 S.W.2d 526, 538-39 (Tenn. 1993) (holding that testimony that a witness was "having trouble in school and crying a lot" was relevant as it tended "to bolster [the witness's] credibility"). But see State v. Thomas D. Stricklin, No. M2005-02911-CCA-R3-CD, 2007 WL 1028535, at *22 (Tenn. Crim. App. Apr. 5, 2007) (holding that a witness's description of her reaction to the victim's statement was not relevant).

The Defendant also argues that the probative value of Investigator Sakovich's testimony was substantially outweighed by the danger of unfair prejudice. However, the Defendant raises this argument for the first time on appeal. As such, the Defendant has waived plenary review of this argument. See State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) (stating that "issues raised for the first time on appeal are waived"). Nor has the Defendant established that plain error review is warranted. Here, the Defendant has failed to establish that a clear and unequivocal rule of law was breached. State v. Minor, 546 S.W.3d 59, 67 (Tenn. 2018). Investigator Sakovich's testimony was highly relevant given the unique role the credibility of the victim plays in sexual offenses like the ones at issue in this case. Moreover, Investigator Sakovich's testimony was limited to a physical description of the victim's demeanor during the

forensic interview. The trial court did not allow Investigator Sakovich to opine on what emotions the victim may have experienced during her forensic interview. Accordingly, we conclude that the trial court did not abuse its discretion in admitting Investigator Sakovich's testimony.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE