IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 12, 2020 Session

## STATE OF TENNESSEE v. ELIZABETH LYNN SCHMITZ

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2016-CR-148          Larry J. Wallace, Judge**

_____

### No. M2019-00624-CCA-R3-CD
_____

Defendant, Elizabeth Lynn Schmitz, appeals her convictions by a Dickson County jury of attempted theft of property over $500 and hindering a secured creditor. The trial court sentenced Defendant to two-years for hindering a secured creditor and a concurrent term of eleven months and twenty-nine day for the misdemeanor theft, suspended to probation. On appeal, Defendant argues the evidence was insufficient to support either conviction when the evidence demonstrated that the subject property of both offenses was her own car. Defendant also claims the trial court gave incomplete instructions to the jury. After a full review, we conclude that Defendant is entitled to relief as to the attempted theft of property conviction because Defendant cannot be convicted of attempted theft of something she owned, and we vacate the conviction as to that count. As to the remaining count of hindering a secured creditor, we confirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part and Affirmed in Part.**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Olin J. Baker and Mark E. Atchison (on appeal), Charlotte, Tennessee, and H. Scott Saul (at trial), Nashville, Tennessee for the appellant, Elizabeth Lynn Schmitz.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; Ray Crouch, District Attorney General; and Carey Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual and Procedural History

Defendant was indicted by the Dickson County Grand Jury for theft over $1,000.00 and less than $10,000.00, related to the taking a 2006 Ford Taurus without the effective consent of David Lee. T.C.A. § 39-14-103. Six months later, a superseding indictment was obtained by the State, adding a second count, hindering a secured creditor. T.C.A. § 39-14-116.

In 2012, Defendant bought a 2006 white Ford Taurus through an online auction from the State of Tennessee. In July of 2015, Defendant believed that "one of [her] exes put water in the gas tank." She called her insurance company and requested to have the car towed. The insurance company contacted Glen James and Sons Wrecker Service (James) to pick up the car. James delivered the car to Lucky's Garage (Lucky's), in Dickson. Lucky's was owned by David Lee.

Defendant thought her car was taken to another garage, but she was later told by her insurance company that it was taken to Lucky's. Upon learning that Lucky's had her car, she called the garage. She spoke to Rocky Kathy and told him the car had been "vandalized" and she wanted to report it to her insurance company. Lucky's confirmed the presence of water in the gas tank.

After sending out a couple of adjusters, the insurance company approved a repair of the car for $733.00. Defendant would be responsible for the first $500.00 which represented her deductible. Lucky's prepared an estimate of $733.02. Defendant advised Lucky's she did not want the garage to repair her car. She wanted the car taken to another garage.

On August 13, 2015, Defendant presented herself to Mr. Lee at Lucky's demanding her car. She had a 9mm Glock pistol in a pink holster "strapped to her side." Mr. Lee determined that he "was not going to argue with her." Mr. Lee advised Defendant that Lucky's paid James $106 for their towing service, that she owed for the work Lucky's had done and storage Lucky's had incurred, and that he would not release the car until he was paid. Mr. Lee estimated the amount owed to be between $170.00 and $180.00.

At this point, things began to heat up and eventually the Dickson Police Department was called, resulting in Officer Scott Hull and Sergeant Travis Pulley arriving at Lucky's. Officer Hull advised Defendant that she could not take the car until the bill was satisfied. He told her this was "a civil matter" and that amount owed represented "services rendered on the vehicle and involving the tow" that Lucky's had

already paid. Defendant became "argumentative, very upset, [and] agitated. . . ." After being threatened with an arrest for disorderly conduct, Defendant left Lucky's without the car.

At some point in mid-August, Defendant reported to her insurance company that the car was stolen from the Goodwill parking lot. When contacted by a representative from Defendant's insurance company, Mr. Lee informed the representative that the car was indeed still at his garage and had never left. On a conference phone call with the insurance representative and Mr. Lee, Defendant hung up on the callers.

Time passed and the car remained at Lucky's. Mr. Lee sent a certified letter to Defendant on August 26, 2015, to the address Defendant had provided Mr. Lee. The letter included a bill for $716.38 owed to Lucky's, which included storage fees. Someone at Defendant's residence signed for the letter on September 12, 2015, but Defendant claimed she did not see the letter. Because the original repair estimate was for $733.02, she remained under the impression Mr. Lee was demanding nearly $800.00 for repair work that she never authorized.

Mr. Lee ran notices of auction in the Dickson County Herald on September 23, 2015 and September 25, 2015. On September 28, 2015, the day scheduled for the auction, no one showed up at the auction to bid on the car. It was Mr. Lee's belief, based on Tennessee's Mechanic's Lien law, that, at that point, the car belonged to him.

After the auction, Mr. Lee spent approximately $1,800.00 for repairs on the car, preparing it for sale. He put the car on the front lot of Lucky's displaying a for sale sign.

The second night the locked car was left outside after being offered for sale, a surveillance camera captured the lights of the car mysteriously turning on, as if someone with a remote key had unlocked the car. A female, with the same "physique" as Defendant, got in the car and drove it away from Lucky's. According to Officer Hull, Defendant admitted that she took the car when he confronted her about the car's removal from Lucky's. Officer Hull said that she told him that she would not give it back "because it was hers." She refused to tell Officer Hull where the car was located. At trial, Defendant denied that the individual in the surveillance video was her, however she told the jury that if it was her, "I'd be proud to say it was." She maintained that she did not take the car but "[she] had the right to take [it] and [she] think[s] that needs to be expressed because the code says he can't even legally put a lien on it, nor did he ever."

After the car was taken from Lucky's, Defendant filed an application for a lost title on the car in Humphreys County, although she claimed her original title was in her

safe in Michigan. Defendant noticed that no lien appeared on the car. She gave this new title to Officer Hull when she turned herself in.

Based on this proof, the jury convicted Defendant of attempted theft of property over $500 and hindering a secured creditor. After a sentencing hearing and a denial of motion for new trial, Defendant timely filed this appeal.

## *Analysis*

On appeal, Defendant claims (1) the evidence was not sufficient to convict her of attempted theft or hindering a secured creditor because the State failed to establish the creation or existence of a security interest, and (2) the trial court erred by not providing a complete charge to the jury. The State disagrees.

## *I. Sufficiency of the Evidence*

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Id.* (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Therefore, the prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *Dorantes*, 331 S.W.3d at 379; *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

## *A. Hindering a Secured Creditor*

Defendant argues that the State failed to prove the existence of or proper creation of a security interest or lien beyond a reasonable doubt. Defendant further contends that the State failed to prove that Defendant had the intent to hinder the enforcement of any security interest or lien on her car. The State argues that a jury could rationally conclude that there was an enforceable lien and that Defendant intended to hinder the enforcement of the lien.

The crime of hindering a secured creditor occurs when

(a) A person who claims ownership of or interest in any property which is the subject of a security interest, security agreement, deed of trust, mortgage, attachment, judgment or other statutory or equitable lien commits an offense who, with intent to hinder enforcement of that interest or lien, destroys, removes, conceals, encumbers, transfers, or otherwise harms or reduces the value of the property.

(b) For purposes of this section, unless the context otherwise requires:

(1) "Remove" means transport, without the effective consent of the secured party, from the state or county in which the property was located when the security interest or lien attached; and

(2) "Security interest" means an interest in personal property or fixtures that secures payment or performance of an obligation.

T.C.A. § 39-14-116.

Tennessee specifically protects "garagekeepers" or towing firms. In relevant part, it provides that:

(a)(1)(A) Garagekeepers or establishments substantially in the business of towing vehicles for hire, pursuant to title 55, chapter 16, hereinafter referred to as "towing firms," shall be entitled to a lien upon all vehicles that lawfully come into their possession and are retained in their possession until all reasonable charges due are paid. A garagekeeper may, after thirty (30) days, enforce this lien in the manner prescribed for the enforcement of artisans" liens under §§ 66-14-102 -- 66-14-106, except the garagekeeper shall:

(i) Only be required to advertise the sale one (1) time in a newspaper published in the place where the sale is to be held; and

(ii) Include the vehicle identification number, if it is ascertainable, in the notice required pursuant to § 66-14-103 and in the advertisement of the sale described in § 66-14-104.

. . . .

(b) For purposes of this section, "garagekeeper" means any operator of a parking place or establishment, motor vehicle storage facility, or establishment for the servicing, repair or maintenance of vehicles.

T.C.A. § 66-19-103(a)-(b).

Here, the record shows that Defendant requested her insurance company to tow her car. Lucky's garage was located in Dickson County. Defendant resided in Humphreys County and she also maintained a residence in Michigan. The car was towed to Lucky's garage. Upon finding her car at Lucky's, Defendant spoke to a garage attendant and was told she could obtain a free estimate. Once Defendant learned the estimated cost of repairs, she told Lucky's that she could get the repairs done elsewhere for less money and that Lucky's was not to repair the car. Defendant attempted to claim her car at Lucky's garage, and Mr. Lee requested payment for the cost of towing and diagnostic testing before he would release the car. Defendant refused to pay. The exchange got heated, and the police were called. The police told Defendant that she would have to pay Mr. Lee before she could have her car.

Defendant's car was lawfully in Mr. Lee's possession because Defendant had requested that her insurance tow her car. A lien attached as soon as Mr. Lee paid the tow bill and took possession of the car. *See AmSouth Bank v. Trailer Source, Inc.*, 206 S.W.3d 425, 435 (Tenn. Ct. App. 2011) ("Attachment occurs at the instant of creation of an enforceable security interest."). Knowing that Mr. Lee was due fees for the tow and diagnostics, Defendant took the car and told police that she had hidden the car and would not return it. There was sufficient evidence for a rational trier of fact to conclude that Defendant had the intent to hinder enforcement of the garagekeeper's lien. Defendant is not entitled to relief.

### B. Attempted Theft

Defendant argues that she could not be convicted of theft because the State failed to establish that Mr. Lee or Lucky's garage was an owner of the car. The State argues that a jury could conclude that Defendant committed attempted theft of property.

Tennessee Code Annotated section 39-14-103(a) explains that theft of property occurs when a person knowingly obtains or exercises control over the property without the owner's effective consent with "the intent to deprive the owner of property." "'Owner' means a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property" T.C.A. § 39-11-106(a)(28).

Criminal attempt is defined in the code as follows:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3), unless the person's entire course of action is corroborative of the intent to commit the offense.

(c) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.

T.C.A. § 39-12-101.

A garagekeeper can become an owner but it must comply with Tennessee Code Annotated section 66-19-104. The garagekeeper must inform the consumer that a written estimate can be requested for repairs that cost more than $250, and any repairs not originally authorized may not be billed without the consumer's consent or a good-faith effort to obtain consent. T.C.A. § 66-19-104(a)(1)-(a)(2). Enforcement of the lien requires written notice to the person for whose account the items were repaired; the

notice may be given by registered mail to the person's last known address. T.C.A. § 66-14-102(a). The purpose of the notice is to demand payment and to give notice that if payment is not made, the item will be advertised and sold by auction at a specified time and place. T.C.A. § 66-14-103. The date of the demand for payment shall not be less than ten days "from the time when the notice should reach its destination, according to the due course of post, if the notice is sent by mail." *Id*. § 66-14-103(3). After the ten days has elapsed, an advertisement shall be published, and the sale must be held no less than fifteen days from the date of the first publication. T.C.A. § 66-14-104.

The proof at trial, in the light most favorable to the State showed that Defendant's car was towed to Lucky's Service Center on July 27, 2015. Mr. Lee paid the towing costs and conducted a diagnostic test. Upon receiving the car and paying the tow bill, Mr. Lee had a possessory, statutory lien on the car. Defendant spoke with the "front desk guy" and requested a repair estimate. Mr. Lee presented an estimate to Defendant's insurance company on July 29, 2015. Defendant called Lucky's and told the front desk clerk that they were not to repair her car. Defendant was informed that her bill for diagnostics and towing would be about $180. On August 13, 2015, Defendant went to Lucky's and informed Mr. Lee that she was not going to pay him. After further argument, the police were called, and Defendant was told that she could not take her car without paying her bill. Lucky's mailed, by certified mail, an invoice to Defendant on August 26, 2015, and it was signed for on September 12, 2015. The invoice stated that Defendant's car would be sold at auction if the bill was not paid by September 25, 2016.

Mr. Lee placed an advertisement in the paper on September 23 and September 25. The notice announced the auction on September 28, 2015. On the sale date, no bidders attended the auction, and it was Mr. Lee's understanding that he effectively owned the car. Mr. Lee repaired the car and put a "for sale" sign on the car. On October 14, 2015, video footage showed that the car was unlocked by remote control, and someone who had a physique similar to Defendant drove the car away. Defendant obtained a replacement title that showed no liens and listed her as the sole owner of the car on October 15, 2015. Officer Hull contacted Defendant, and she admitted to taking the car.

The State concedes that Mr. Lee had not perfected his ownership of the car because he did not satisfy the requirements of Tennessee Code Annotated section 66-19-102-104. Mr. Lee auctioned the car five days after the first advertisement, well short of the fifteen days required. The State relies on Mr. Lee's possession as proof of ownership. *See State v. Timothy Neal Stiles*, No. W2013-01164-CCA-R3-CD, 2014 WL 1168607, at *6 (Tenn. Crim. App. Mar. 21, 2014), *perm. app. denied* (Aug. 26, 2014). However, possession in this case only perfects the lien and does not convey ownership. *See* T.C.A. 66-19-103(a)(1)(A). Mr. Lee held a possessory, statutory lien on the car and is specifically excluded as an owner as defined under the theft statute. *See* T. C. A. § 39-

11-106(a)(28). The only further proof put forward was the title that Defendant obtained the day after the car was taken, and it showed Defendant as sole owner of the car. Because the State has failed to prove that Defendant no longer owned the car, we find the evidence insufficient to support Defendant's conviction of attempted theft of property. Defendant could not be convicted of an attempted theft of something that she owned. Accordingly we vacate Defendant's conviction for attempted theft of property.

## II. Jury Instructions

Defendant argues that the trial court erred by not providing a jury instruction on the creation of a security interest, which she argues was necessary for the jury to hear a complete charge of the applicable law. The State argues that Defendant has waived this issue.

Defendant did not specifically raise this issue in a motion for new trial. Tennessee Rule of Appellate Procedure 3(e) provides that in "all cases tried by a jury, no issue presented for review shall be predicated upon . . . [a] ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." *See also State v. Lowe–Kelley*, 380 S.W.3d 30, 33 (Tenn. 2012) (noting that "[a] defendant who fails to provide specific grounds for relief in a motion for new trial risks failing to preserve those grounds for appeal"). "Appellate review generally is limited to issues that a party properly preserves for review by raising the issues in the trial court and on appeal." *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018). However, Tennessee Rule of Appellate Procedure 36(b) allows this Court to take notice of plain errors that were not raised in the trial court. *Smith*, 24 S.W.3d at 282.

Defendant is not entitled to plain error relief because she has not established that consideration is necessary to do substantial justice. *See Smith*, 24 S.W.3d at 282 (quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)). Therefore, Defendant is not entitled to relief.

## Conclusion

For the aforementioned reasons, the judgments of the trial court are vacated in part and affirmed in part.

_____
TIMOTHY L. EASTER, JUDGE