IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2025

## STATE OF TENNESSEE v. CONSTANCE MONIEKA EVERY

**Appeal from the Criminal Court for Knox County**
**No. 121689   D. Kelly Thomas, Jr., Senior Judge**

———————————————————

**No. E2024-01606-CCA-R3-CD**

———————————————————

The Defendant was convicted in the Knox County Criminal Court of disrupting a lawful meeting, a Class A misdemeanor, and received an eleven-month, twenty-nine-day sentence to be served on supervised probation.  On appeal, the Defendant claims that the evidence is insufficient to support her conviction and that the statute prohibiting disruption of a lawful meeting is unconstitutionally vague as applied to her.  Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and MATTHEW J. WILSON, JJ., joined.

Andrew O. Beamer (on appeal and at trial) and David A. Stuart (at trial), Knoxville, Tennessee, for the appellant, Constance Monieka Every.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Sean F. McDermott, Molly T. Martin, and Franklin Ammons, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

We glean the following facts from the record:  On April 12, 2021, a Knoxville police officer shot and killed an African American male student in a bathroom at Austin-East High School.  The incident caused social unrest, and community members began demanding transparency about the shooting, including the release of the officer's body camera video.  On the evening of April 19, 2021, the Defendant and a group of protestors

entered the Knoxville City-County Building during a Knox County Commission meeting. The Defendant activated the siren on a bullhorn and spoke through the bullhorn to demand release of the video. Uniformed police officers quickly escorted her and six other individuals out of the building and arrested them for disrupting the meeting.

In June 2022, the Knox County Grand Jury indicted the Defendant and her six codefendants for disrupting a lawful meeting, a Class A misdemeanor, pursuant to Tennessee Code Annotated section 39-17-306. The Defendant filed a motion to dismiss the indictment, asserting that her prosecution violated various rights protected by the federal and state constitutions, including the First Amendment of the United States Constitution and article I, section 19 of the Tennessee Constitution, which protect freedom of speech. On April 5, 2024, the trial court entered a written order denying the motion pursuant to this court's analysis in *State v. Ervin*, 40 S.W.3d 508, 511 (Tenn. Crim. App. 2000). The State tried the Defendant and three of her codefendants jointly in April 2024.

At trial, Sergeant John Sharp testified that he was a plainclothes narcotics officer with the Knox County Sheriff's Office ("KCSO") and that part of his job duties included checking the social media accounts of activists in the community.[1] The Knox County Commission conducted its meetings in the Large Assembly Room of the Knoxville City-County Building, and a Commission meeting was scheduled for April 19, 2021. Sergeant Sharp stated that on Sunday, April 18, 2021, he looked at the Defendant's Facebook page and saw a post in which "she was encouraging people to come to the county commission meeting to stop the meeting and to interrupt the proceedings[.]" Sergeant Sharp said that he continued to monitor the Defendant's Facebook page and that she continued to post messages "inciting people to show up and cause problems" at the meeting. Sergeant Sharp identified two screenshots of the Defendant's Facebook posts, and the State introduced the screenshots into evidence. The first screenshot showed that on April 18, 2021, the Defendant posted a message that read, "TOMORROW IS THE COUNTY COMMISSION MEETING AND WE ARE SHUTTING THAT [S***] DOWN!!!!" The second screenshot showed that on April 19, 2021, the Defendant posted a message that read, "TODAY!!!! @6pm City/County Building!!! SHUT IT DOWN!!!"

Sergeant Sharp testified that he attended the Commission meeting on April 19 and arranged for additional plainclothes officers to be present "to observe and then react if necessary." Uniformed officers were also present. During the meeting, Sergeant Sharp stood near the back wall of the Large Assembly Room, and the county commissioners sat at the front of the room. Sergeant Sharp heard chanting or yelling outside the building. At

---

[1] We note that the Facts section of the Defendant's brief does not comply with Rule 27(a)(6), Tennessee Rules of Appellate Procedure, which requires that the brief contain "[a] statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record." The Defendant's brief does not contain any information from the trial.

some point, a group of twenty-five to thirty people, including the Defendant, entered the Large Assembly Room and went to the "far side" of the room. Sergeant Sharp said he saw the Defendant "walking around people, like directing them or giving them some kind of information quietly." The Defendant then pulled out a bullhorn; activated a "loud high-pitched" siren on the bullhorn; and began yelling through the bullhorn that the meeting was "shut down" and "over." Sergeant Sharp said the officers "let her be for just a second." The Defendant continued, so the uniformed officers approached her to escort her out of the room. However, the Defendant's fellow protestors surrounded her, blocking the officers. The officers ultimately were able to "get ahold" of the Defendant and escort her out of the Large Assembly Room. The Defendant continued yelling, and the officers arrested her.

Sergeant Sharp identified several video recordings of the incident. The State played the recordings for the jury, and we have reviewed the videos. The videos show that the Defendant and a group of protestors entered the back of the Large Assembly Room while a commissioner was speaking during the meeting. The Defendant and each of the protestors raised a fist but were silent. The Defendant then said something to the other protestors, took the bullhorn out of her backpack, and activated the siren on the bullhorn for about twenty seconds. At the Defendant's direction, the protestors surrounded her, and someone in the room said, "Officers." The Defendant turned off the siren and stated through the bullhorn, "Knox County Commission, your meeting is over. [Indecipherable] we've got a kid who was murdered in Knox County schools, and ya'll gonna carry on like these children don't deserve to have their rights and other factors. It is not okay what you all are doing whatsoever." Uniformed officers grabbed the Defendant and began taking her out of the Large Assembly Room. Someone said the meeting would stand in recess for ten minutes, and a gavel began banging. The Defendant yelled, "A child was murdered by the very people who got their hands on me! Take your hands off of me! I have not broken any laws! I am exercising my right to peaceably assemble and use the freedom of speech! You [f***ing] murderers! You murderers! Ya'll are murderers!" Two uniformed officers, one on either side of the Defendant and each holding one of her arms, led her out of the Large Assembly Room and out of the City-County Building. Additional officers escorted other protestors out of the room.

Sergeant Sharp testified that the police arrested seven people, including the Defendant. Officers did not arrest protestors who were standing in the Large Assembly Room with their fists raised but remained silent because those protestors did not interrupt the meeting. The State showed Sergeant Sharp a photograph, and he identified it as a photograph of a printed sign taped to the door of the Large Assembly Room on the day of the meeting. The sign read as follows:

- 3 -

39-17-306. **Disrupting meeting or procession.**
(a) A person commits an offense if, with the intent to prevent [a] gathering, the person substantially obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance.

(Acts 1989, ch. 591)

Sergeant Sharp said that he did not know when the sign was taped to the door but that he did not remember the sign being on the door for other Commission meetings.

On cross-examination, Sergeant Sharp testified that he began monitoring the Defendant's Facebook page about three days before the meeting and that he did not speak with any Knox County commissioners about arresting protestors. He said that the duration of the entire incident, from the time the Defendant activated the siren until the officers escorted her out of the Large Assembly Room, was one and one-half minutes.

Commissioner Larsen Jay testified that in April 2021, he was the Chairman of the Knox County Commission, which was the legislative body for Knox County government. The Commission met twice per month in the Large Assembly Room of the City-County Building. Meetings were open to the public, and any member of the public could speak during the Public Forum section of the meeting by signing up on the Commission's website or by telephoning the Commission's office. Members of the public also could speak by showing up at a meeting and requesting time to speak from a commissioner. Commissioner Jay said that the Defendant had signed up to speak at Commission meetings prior to April 19, 2021, and that no commissioner had ever prevented her from speaking at a meeting.

Commissioner Jay testified that during the Commission meeting on April 19, 2021, he noticed that a large group of people entered the Large Assembly Room. The Defendant pulled out a bullhorn, and a loud siren "went off." Commissioner Jay described the siren as "alarming." He said that the meeting was not yet open to Public Forum speaking when the Defendant activated the siren and that the Defendant "began to yell about stopping the meeting." The Defendant never approached the podium for public speaking or signed up to speak during the Public Forum section of the meeting.

Commissioner Jay testified that he "gaveled the gallery" to call the meeting back into order. However, banging his gavel had no effect on the Defendant, so police officers began to escort her and the group of protestors out of the room. Commissioner Jay said that a man was speaking at the podium and that it was "virtually impossible" for the

commissioners to have a discussion or to vote, so Commissioner Jay announced a ten-minute recess.

On cross-examination, Commissioner Jay testified that he banged his gavel and called for "'Officers'" when the Defendant activated the siren. He said he called for the officers so they could escort the group of protestors out of the room. He did not ask the officers to arrest the Defendant.

Commissioner Jay acknowledged that the disruption was "very quick." After the incident, the Commission meeting resumed without any other disruptions, and the meeting concluded on time. Commissioner Jay said that he considered a person's yelling and making loud noises to constitute a disruption to a meeting and that the Defendant was disruptive when she activated the siren. He said that the Defendant had every opportunity to contact him about speaking at the meeting and that he would have allowed her to speak if she had asked him to do so.

Officer Robert Purvis of the KCSO testified that he was responsible for courtroom security. On April 19, 2021, Officer Purvis was wearing his police uniform and was providing security at the Knox County Commission meeting "to make sure that nothing disruptive happen[ed] during the meeting." Officer Purvis initially was standing in front of the Defendant and the group of protesters. The protestors encircled the Defendant, and the Defendant pulled out a bullhorn. At that point, Officer Purvis saw two other uniformed officers step into the group of protestors. He said the objective of those officers was "to remove that bullhorn and remove that group that were disturbing the meeting." Officer Purvis did not arrest the Defendant but arrested one of her codefendants.

On cross-examination, Officer Purvis testified that the group of protestors did not disrupt the meeting until the Defendant activated the siren. The protestors then surrounded the Defendant, effectively blocking the officers from reaching her. Officer Purvis said that he had seen the Defendant in the City-County Building previously, that she had never caused any problems prior to April 19, 2021, and that she was always respectful.

Officer Travis Janeway of the KCSO testified that he was one of the police officers who provided security for the Knox County Commission meeting on April 19, 2021. When the Defendant activated the siren on the bullhorn, several officers, including Officer Janeway, approached the group of protestors. The protestors blocked the officers from grabbing the Defendant. Ultimately, though, the officers were able to take custody of her and escort her out of the Large Assembly Room.

On cross-examination, Officer Janeway testified that it was not unusual for him to provide security at Knox County Commission meetings and that protestors of Covid mask

mandates had disrupted previous Commission meetings. Police officers removed mask mandate protestors who were disruptive but did not arrest them. Officer Janeway explained that unlike the Defendant, the mask mandate protestors did not yell through a bullhorn. On April 19, 2021, the police had received information that the Defendant might try to disrupt the Knox County Commission meeting. Officer Janeway and the other officers were instructed that the protestors had the right to "stand and be civil" but that the officers were to remove protestors who made noise or became disruptive. Officer Janeway said that he had seen the Defendant in the City-County Building previously and that she had never caused any trouble.

Captain James Hammond of the KCSO testified that on April 19, 2021, officers were advised of a possible security threat to the Knox County Commission meeting and were asked to attend the meeting in case a disruption occurred. Captain Hammond saw the Defendant's Facebook post in which she threatened to shut down the meeting. Based on that post, Captain Hammond and another officer taped signs to doors in the City-County Building, warning people that disrupting the meeting was against the law.

Captain Hammond testified that he wore his police uniform to the meeting. During the meeting, a group of people entered the Large Assembly Room and stood at the back of the room. A bullhorn siren began going off, so police officers approached the group. The group of protesters blocked the police from reaching the Defendant, but Captain Hammond pushed his way into the group, grabbed the Defendant's bullhorn, and handed the bullhorn to another officer. The Defendant continued yelling, so Captain Hammond grabbed her and started leading her out of the Large Assembly Room. He then led the Defendant out of the City-County Building and took her to the booking area of the jail.

Captain Hammond testified that he arrested the Defendant because she used the bullhorn and announced the meeting was over. Officers arrested a total of seven people but did not arrest anyone who was only standing in the Large Assembly Room with a raised fist.

On cross-examination, Captain Hammond testified that Commissioner Jay had to recess the meeting due to the siren and that the Defendant was "substantially interfering" with the meeting. No one told Captain Hammond to arrest the Defendant. Captain Hammond stated, "I didn't need anyone to tell me to arrest her. I [saw] her commit the crime myself." Captain Hammond acknowledged that the police could have escorted the Defendant and the six other protestors out of the building and could have ordered them not to return to the meeting; the officers did not have to arrest them. At the conclusion of Captain Hammond's testimony, the State rested its case.

Dr. Dasha Lundy testified that she was a member of the Knox County Commission on April 19, 2021, and that she represented the district in which the Austin-East student was shot and killed. Dr. Lundy was in the Large Assembly Room when the Defendant activated the siren. Dr. Lundy said that she did not remember the duration of the entire incident but that "it seemed very brief." The State asked if the disturbance made the meeting "go longer than it normally would have," and Dr. Lundy said no. She said that seeing the police arrest the Defendant and the other protestors upset her "because it always seems like when people of color, or Black people, come to advocate for their community, it appears as a threat. And on all those days when the anti-maskers came to the meeting and interrupted it and then did loud things, nothing happened to them."

On cross-examination by the State, Dr. Lundy acknowledged that she and the Defendant were Facebook "friends" but said that she did not talk with the Defendant before the meeting. Dr. Lundy did not remember if she saw the Defendant's Facebook post about shutting down the meeting, but she saw "a flyer like that" posted in the community. Dr. Lundy said she was not concerned that someone would cause a disturbance at the meeting because people protested at Commission meetings "all the time." She acknowledged that the Defendant had spoken at previous Commission meetings as part of the Public Forum and that the Defendant spoke out about the shooting as part of the Public Forum at the Commission's meeting on April 26, 2021.

The Defendant testified that she was born and raised in Knoxville and that she served fifteen years in the military, completing two tours in Afghanistan. The Defendant said that she was one hundred percent disabled and that she considered herself a community activist.

The Defendant testified that a seventeen-year-old high school student was "murdered" by the police on April 12, 2021, and that the community was "heavily traumatized" by the incident. The Defendant began protesting the killing on her Facebook page. She also created posts demanding that the Knox County District Attorney General release body camera video of the shooting and alleging that the district attorney was "setting the stage to cover up" the shooting. On April 19, 2021, the Defendant posted the following message on Facebook: "Also please please please support [the bailout fund]!!!! We will never be violent in any of our actions!!! But we are always prepared to practice civil disobedience and more [than] happy to go to jail for JUSTICE . . .!!!! SAY HIS NAME!!!!!!" The Defendant never said in her posts that she was going to stop the Knox County Commission meeting. Addressing her Facebook posts on April 18 and 19 in which she wrote "shut down" the meeting, the Defendant told the jury,

So, obviously, we don't want to shut down the meeting. That would defeat the purpose of the county commissioners who we're there to address."

. . .

And so when we say "Shut it down," what we are referencing to is that whatever the regularly scheduled agenda was, we no longer want to be the priority. We wanted that to be shut down. What we wanted to prioritize was the conversation about [the Austin-East student], the release of the tapes, and, again, the call of accountability for the police officer involved in [the student's] murder that happened at Austin-East High School.

The Defendant testified that she and the other protestors were at the meeting to have a "conversation" about the school shooting, the impact of the shooting on other students, and the lack of transparency about the shooting. She noted that even the Mayor of Knoxville had requested release of the body camera video. The Defendant said she and the other protestors did not want to be arrested at the Commission meeting. However, forty-eight hours after the meeting, the Knox County District Attorney released the video of the shooting. Therefore, the protestors achieved their goal. The Defendant said she spoke during the Public Forum section of the Knox County Commission's April 26, 2021 meeting because "the protests were no longer necessary."

On cross-examination by the State, the Defendant testified that "[t]here are limits in certain circumstances and situations" to free speech. She acknowledged that she understood how to sign up to speak at Knox County Commission meetings and that she did not sign up to speak at the April 19 meeting. The Defendant said that she was not trying to shut down the meeting but that she wanted the commissioners' attention and wanted their discussion to focus on the shooting of the Austin-East student. At least thirty people were in the group of protesters. The Defendant said that she did not remember what she told the protestors before she pulled the bullhorn out of her backpack but that "[a]t some point you do see me actually gesture [for them] to circle around me." She said she wanted the protestors around her for protection because she knew the police would have an "aggressive response" to her actions. The Defendant denied "calling the shots" at the meeting and said, "It was a collective effort. . . . Everybody understood what we were going for, and everybody had their voice of thought, opinion, organization. Everybody had input to what we were going to do."

At the conclusion of the Defendant's testimony, the defense rested its case. Defense counsel asserted during closing arguments that the Defendant did not "substantially obstruct" the meeting because her actions were brief, but the jury convicted her of disrupting a lawful meeting as charged in the indictment. After a sentencing hearing, the

trial court sentenced her to eleven months, twenty-nine days to be served on supervised probation.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant claims that the evidence is insufficient to support her conviction. Specifically, she claims that the proof fails to show that she substantially obstructed the meeting because the duration of the incident was less than ninety seconds. The State argues that the evidence is sufficient. We agree with the State.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

Therefore, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *See State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of review for the sufficiency of the evidence is the same whether the conviction is based on direct or circumstantial evidence or a combination of the two. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

Tennessee Code Annotated section 39-17-306(a) provides, "A person commits an offense if, with the intent to prevent or disrupt a lawful meeting, procession, or gathering, the person substantially obstructs or interferes with the meeting, procession, or gathering

by physical action or verbal utterance." As this court has stated, "To obtain a conviction under Tennessee Code Annotated § 39-17-306, the State must prove the defendant substantially obstructed the conduct of a lawful meeting with the specific intent of bringing the meeting to an early termination or effectively impairing the conduct of the assemblage by physical action or verbal utterance." *Ervin*, 40 S.W.3d at 519-20.

Taken in the light most favorable to the State, the evidence shows that the Defendant posted on Facebook the day before the meeting and the day of the meeting that the protestors were going to "shut down" the meeting. During the meeting, the Defendant used a bullhorn to activate a siren for approximately twenty seconds. Witnesses at trial described the siren as "loud," "high-pitched," and "alarming." Commissioner Jay called for "Officers," and the Defendant stated through the bullhorn, "Knox County Commission, your meeting is over." Commissioner Jay tried to bring the meeting back into order by banging his gavel, but the Defendant continued speaking through the bullhorn. Even when officers grabbed her and began escorting her out of the Large Assembly Room, she continued to disrupt the meeting by yelling for the officers to take their hands off her and by repeatedly calling them "murderers." Commissioner Jay called a ten-minute recess during the incident, telling the jury that it was "virtually impossible" to continue the meeting during the Defendant's disruption. The Defendant herself testified that the purpose of attending the meeting was to disrupt the Commission's agenda and to force the Commission to prioritize its discussion on the school shooting. Although the duration of the disruption was about ninety seconds, the jury was able to view multiple videos of the incident and concluded that the Defendant substantially obstructed or interfered with the meeting. The evidence is sufficient to support the Defendant's conviction.

## II. Unconstitutionally Vague

The Defendant claims that the statute proscribing disrupting a lawful meeting is unconstitutionally vague as applied to her because the statute does not state that it includes government meetings. The State argues that the Defendant has waived her argument because she did not raise it in the trial court and that, in any event, the statute is not unconstitutionally vague. We agree with the State that the issue is waived.

Tennessee Rule of Criminal Procedure 12(b)(2) provides that defenses and objections based on "a defect in the institution of the prosecution[]" or "a defect in the indictment" must be raised before trial. Tenn. R. Crim. P. 12(b)(2)(A), (B). Rule 12 includes issues related to the constitutionality of statutes and the constitutional rights of the accused. *State v. Rhoden*, 739 S.W.2d 6, 10 (Tenn. Crim. App. 1987) (citing *State v. Farmer,* 675 S.W.2d 212, 214 (Tenn. Crim. App. 1984)). "Unless the court grants relief for good cause, a party waives any defense, objection, or request by failing to comply with . . . rules requiring such matters to be raised pretrial[.]" Tenn. R. Crim. P. 12(f)(1).

However, "'a claim that the proscriptive statute is unconstitutional on its face strikes at the jurisdiction of the convicting court and, as a result, may be raised at any time before the sentence has expired[.]'" *State v. Broyles*, No. E2019-01033-CCA-R3-CD, 2021 WL 2156935, at *12 (Tenn. Crim. App. May 27, 2021) (quoting *State v. Woodard*, No. E2016-00676-CCA-R3-CD, 2017 WL 2590216, at *9 (Tenn. Crim. App. June 15, 2017), *no perm. app. filed*), *perm. app. denied* (Tenn. Oct. 13, 2021). Appellate review preservation requirements ensure that the defense and the prosecution are afforded an opportunity to develop fully their opposing positions on an issue, and such requirements also enable a trial court to avoid or rectify an error before a judgment becomes final." *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018) (citing *Puckett v. U.S.*, 566 U.S. at 134 (2009)).

Here, the Defendant contends that Tennessee Code Annotated section 39-17-306(a) is unconstitutionally vague, not on its face, but as applied to her, because it does not state that it applies to government meetings. Therefore, she should have raised the issue in a pretrial motion pursuant to Tennessee Rule of Criminal Procedure 12(b). She also failed to raise the issue in her motion for new trial. *See* Tenn. R. App. P. 3(e) (issues not raised in a motion for new trial are waived); *State v. Vasques*, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530, at *22 (Tenn. Crim. App. Oct. 7, 2005), *aff'd on other grounds* 221 S.W.3d 541 (Tenn. 2007). Accordingly, we agree with the State that the issue is waived. The Defendant has not requested relief pursuant to plain error, so we decline any plain error review.

## CONCLUSION

Upon our review, we affirm the judgment of the trial court.

s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE

- 11 -