FILED

04/30/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2026 Session

**STATE OF TENNESSEE v. BARRY J. ZBLESKI, JR.**

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2023-CR-55    Suzanne Lockert-Mash, Judge**

_____

**No. M2025-00645-CCA-R3-CD**
_____

A Dickson County jury convicted the Defendant, Barry J. Zbleski, Jr., of second degree murder by the unlawful distribution of fentanyl or carfentanil and of the knowing sale and distribution of fentanyl resulting in death or bodily injury. The trial court imposed an effective sentence of twenty years' imprisonment. On appeal, the Defendant raises two issues: (1) whether the evidence is legally sufficient to support his conviction for second degree murder; and (2) whether the trial court violated his Sixth Amendment right to confront witnesses by admitting testimony from a substitute medical examiner. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JOHN W. CAMPBELL, SR., JJ., joined.

Michael J. Flanagan, Nashville, Tennessee (on appeal), and Rodger D. Waynick, Dickson, Tennessee (at trial), for the appellant, Barry J. Zbleski, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; W. Ray Crouch, Jr., District Attorney General; and Erin D. Bryson, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

This case arises out of an incident where the Defendant sold fentanyl to a third party, which ultimately resulted in the death of the victim. Prior to the overdose, the victim and his friend, Leticia Griffin, used various drugs procured from different sources. On May 26, 2020, the victim and Ms. Griffin were staying in a motel, and Ms. Griffin called the Defendant to bring her a "20" of heroin, meaning one tenth of a gram. The Defendant arrived at the motel the following morning. Ms. Griffin went out to his van and purchased what she believed to be heroin from the Defendant.

When Ms. Griffin returned to the motel room, the victim asked her for "a small line of that." She prepared a line for him, and he snorted it through a straw. Ms. Griffin then prepared a syringe with the same substance for her own use. After inserting the syringe into her arm, she lost consciousness.

Later that day, motel staff knocked on the door to inform Ms. Griffin that the checkout time had passed. She arose, removed the syringe still in her arm, and threw it into the bathroom. After unsuccessfully trying to rouse the victim, Ms. Griffin realized he was dead. She asked motel staff to call 911 and fled the scene.

Detective Katrena Pulley of the Dickson Police Department arrived at the scene and began collecting evidence. She photographed the room and recovered surveillance footage from the motel. Upon reviewing that footage, Detective Pulley observed a van in the parking lot. She later recognized the van as belonging to the Defendant and confirmed that identification by driving to his residence, where she observed a matching van parked in his driveway and ran its tag.

Detective Pulley also collected Ms. Griffin's syringe, emptied its contents into a vial, and sent that sample to the Tennessee Bureau of Investigation ("TBI") for analysis. The TBI determined that the sample contained fentanyl, a Schedule II controlled substance. A subsequent autopsy established that the victim's death was caused by the toxic effects of acetyl fentanyl, fentanyl, and methamphetamine, and that his blood contained a fatal concentration of fentanyl.

Following an interview with Ms. Griffin, Detective Pulley interviewed the Defendant. When Detective Pulley told him that Ms. Griffin had identified him as her drug source and that the substance he sold her had also killed the victim, the Defendant responded: "I didn't mean to hurt anyone. I thought I had cut it enough."

On February 15, 2023, a Dickson County grand jury charged the Defendant with second degree murder by the unlawful distribution, delivery, or dispensation of fentanyl or carfentanil and with the knowing sale and distribution of fentanyl resulting in death or bodily injury to another. The Defendant proceeded to trial on both charges the following January. The jury returned guilty verdicts on both counts,[1] and the trial court thereafter imposed an effective sentence of twenty years' imprisonment.

The Defendant filed a motion for a new trial, which the trial court denied by written order on May 15, 2025. The Defendant filed a notice of appeal before the trial court ruled on that motion, which became effective upon entry of the trial court's order. *See* Tenn. R. App. P. 4(d).

## ANALYSIS

In this appeal, the Defendant raises two issues. He first challenges the legal sufficiency of the evidence supporting his conviction for second degree murder by unlawful distribution of fentanyl. He also argues that the trial court violated his Sixth Amendment right to confront witnesses by permitting a substitute expert to testify regarding the victim's cause of death. We address each issue in turn.

### A.    LEGAL SUFFICIENCY OF THE EVIDENCE

The Defendant challenges the legal sufficiency of the evidence supporting his conviction for second degree murder by unlawful distribution of fentanyl. He argues that the State failed to prove two elements of the offense. First, he contends that the evidence is insufficient to establish unlawful delivery or distribution because he transferred the substance only to Ms. Griffin and was unaware of the victim's existence. Second, he asserts

---

[1]    The Defendant has not appealed any issues related to his conviction for the knowing sale and distribution of fentanyl that resulted in death or bodily injury to another. As such, we do not address that conviction further. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

that the State failed to establish the required culpable mental state because the proof did not show that he knew the substance he provided was fentanyl.

In response, the State argues that the evidence is sufficient to establish both the delivery element and the requisite mental state. We agree with the State.

### 1. Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, when making that determination, the State "is entitled to the strongest legitimate view of the evidence and any reasonable inferences that may be drawn from it." *State v. Rimmel*, 710 S.W.3d 640, 645 (Tenn. 2025) (citation and internal quotation marks omitted).

To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact." *State v. Curry*, 705 S.W.3d 176, 183 (Tenn. 2025) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

### 2. Elements of the Offense

"The first step in evaluating the sufficiency of the evidence is to identify the elements of the offense." *Rimmel*, 710 S.W.3d at 646. The indictment in this case charged the Defendant with second degree murder through the unlawful distribution, delivery, or dispensation of fentanyl or carfentanil in violation of Tennessee Code Annotated section 39-13-210(a)(3). That statute defines the offense as follows:

> A killing of another by unlawful distribution or unlawful delivery or unlawful dispensation of fentanyl or carfentanil, when those substances alone, or in combination with any substance scheduled as a controlled substance by the

Tennessee Drug Control Act of 1989, compiled in chapter 17, part 4 of this title and in title 53, chapter 11, parts 3 and 4, including controlled substance analogs, is the proximate cause of the death of the user.

Tenn. Code Ann. § 39-13-210(a)(3) (2025).

We have previously recognized that the plain language of this statute creates an offense with three elements:

1. that the defendant unlawfully distributed, delivered, or dispensed a substance; and

2. that the substance was fentanyl or carfentanil; and

3. that the fentanyl or carfentanil, either alone or with other controlled substances or controlled substance analogues, was the proximate cause of the user's death.

*State v. Hollon*, 671 S.W.3d 561, 566 (Tenn. Crim. App. 2023). We have also recognized that the culpable mental states of intent, knowledge, or recklessness are each sufficient to establish the necessary mental state for this offense. *Id.*

In this case, the Defendant challenges the evidence supporting the first and second elements of the offense. He argues that because he delivered the substance only to Ms. Griffin, and not to the victim, the State failed to prove that he delivered "a substance to a user." He also asserts that the evidence is legally insufficient to show that he "knew he was providing fentanyl" to Ms. Griffin. We address each of these arguments below.

### a. Unlawful Delivery or Distribution

The Defendant first argues that he delivered or distributed fentanyl only to Ms. Griffin, not to the victim, and that the record contains no evidence that he was even aware of the victim's existence. The State responds that the statutory definitions of delivery and distribution do not require a direct transfer to the person whose death results. The State further contends that the proof established an unbroken chain from the Defendant's transfer to Ms. Griffin to the victim's use and death. We agree with the State.

The Defendant's argument presents a question of statutory interpretation. As our supreme court has recognized, "[w]e generally interpret statutory terms according to their 'natural and ordinary meaning.'" *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 723 (Tenn. 2024) (citing *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022)). In so doing, we ask "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." *State v. Payne*, 721 S.W.3d 204, 210 (Tenn. 2025) (citation and internal quotation marks omitted); *see Lawson v. Hawkins County*, 661 S.W.3d 54, 59 (Tenn. 2023) ("In interpreting statutory provisions, our role is to determine how a reasonable reader would have understood the text at the time it was enacted."). As part of that endeavor, we may initially consider the statutory text, the broader statutory framework, and any relevant canons of statutory construction. *Deberry*, 651 S.W.3d at 925.

When the statutory language is plain and unambiguous, we apply it as written. *See State v. Nelson*, 23 S.W.3d 270, 271 (Tenn. 2000). In such circumstances, we apply the text in its "normal and accepted use" without resort to legislative history or other external sources. *State v. Strode*, 232 S.W.3d 1, 10-11 (Tenn. 2007) (citations and internal quotation marks omitted). Our obligation is simply to enforce the statute as written. *See In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010); *State v. Capps*, No. E2023-01419-CCA-R3-CD, 2024 WL 5135477, at *5 (Tenn. Crim. App. Dec. 17, 2024), *perm. app. denied* (Tenn. May 23, 2025).

We begin with the statutory definitions. With respect to controlled substances, the General Assembly has defined the terms "distribute," "deliver," and "dispense" in Tennessee Code Annotated section 39-17-402. The term "deliver" means "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6) (2025). The term "distribute" means "to deliver other than by administering or dispensing a controlled substance." *Id.* § 39-17-402(9). The term "dispense" means "to deliver a controlled substance *to an ultimate user* or research subject by or pursuant to the lawful order of a practitioner, including the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for that delivery." *Id.* § 39-17-402(7) (emphasis added).

A reasonable reader would understand that the phrase "ultimate user" modifies only the act of dispensing. The definitions of "deliver" and "distribute" contain no such limitation. Instead, they describe a transfer "from one person to another" without restricting the identity of the recipient. Tenn. Code Ann. § 39-17-402(6), (9). Under this

plain language, a delivery is complete upon any unlawful transfer of a controlled substance from one person to another. The statute does not require that the recipient be the person who ultimately consumes the substance.

The Defendant's reading would require us to add a limitation that the statutory text does not impose. We decline to do so. A reasonable reader would understand that the presence of "ultimate user" language in subsection (7)—and its absence from subsections (6) and (9) within the same definitional section—limits that phrase to the term in which it appears. *See State v. Welch*, 595 S.W.3d 615, 623 (Tenn. 2020); *see also Effler v. Purdue Pharma L.P.*, 614 S.W.3d 681, 689 (Tenn. 2020). We are not at liberty to import restrictions into a statute that its language does not impose. *See State v. Jones*, 589 S.W.3d 747, 758 (Tenn. 2019).

Our conclusion that a "delivery" need not be made to the ultimate end user is consistent with our application of the statute in a similar factual setting. In *State v. Whitehead*, the defendant sold a substance to the victim's companion, and both the companion and the victim used the substance shortly thereafter. *See State v. Whitehead*, No. M2023-01458-CCA-R3-CD, 2024 WL 4381463, at *2-3, 9 (Tenn. Crim. App. Oct. 3, 2024), *no perm. app. filed*. The victim later died, and the substance was determined to be fentanyl. *Id.* Although the defendant in *Whitehead* did not dispute the delivery element on appeal, this court affirmed the conviction under Tennessee Code Annotated section 39-13-210(a)(3) without suggesting that the statute requires a direct transfer to the decedent. *Id.* at *8-10. That result is consistent with the statutory text and with the conclusion we reach here.

The record establishes that the Defendant transferred the substance to Ms. Griffin in the motel parking lot in the early morning hours, at the same motel where the victim was present in their shared room. Ms. Griffin returned directly to the room, where the victim immediately asked her for "a small line of that," and she prepared a line from the same substance for him to consume. The TBI confirmed that the substance in the syringe Ms. Griffin prepared from the same baggie contained fentanyl, a Schedule II controlled substance. The victim's autopsy established that his death was caused by the toxic effects of acetyl fentanyl, fentanyl, and methamphetamine and that his blood contained a fatal concentration of fentanyl.

Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, a rational trier of fact could find that the Defendant unlawfully transferred fentanyl to Ms. Griffin at the location where the victim was present

and that Ms. Griffin provided it to the victim within minutes of receiving it. We conclude that the evidence is legally sufficient to establish the element of delivery and distribution.[2]

### b. Culpable Mental State

The Defendant argues that the State failed to prove the required culpable mental state beyond a reasonable doubt. He contends that Ms. Griffin believed she was purchasing heroin and that the proof does not establish that he knew—or was aware of a substantial risk—that the substance was fentanyl. The State responds that the Defendant's own statements demonstrate that he recognized the risk that the substance could cause serious harm and chose to distribute it anyway. We agree with the State.

In *State v. Hollon*, this court considered whether the State must prove that a defendant charged under Tennessee Code Annotated section 39-13-210(a)(3) had actual knowledge that the substance he distributed was fentanyl or carfentanil. *See Hollon*, 671 S.W.3d at 563. We rejected that requirement and held instead that, because the identity of the distributed substance is a circumstances-surrounding-the-conduct element, the applicable culpable mental state is recklessness. *Id.* at 566. As we explained,

> the State may satisfy this element by proving beyond a reasonable doubt that (i) the defendant disregarded a substantial and unjustifiable risk that the substance delivered to the user was fentanyl or carfentanil; and (ii) the defendant's disregard of that risk constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the defendant's standpoint.

*Id.* at 566-67. The mens rea element is likewise satisfied if the State proves that the defendant was actually aware that the substance was fentanyl or carfentanil. *See* Tenn. Code Ann. § 39-11-301(c) (2025).

The proof of the Defendant's culpable mental state includes a statement he made during a voluntary interview with law enforcement. Detective Pulley testified that, during

---

[2] Although we hold that the delivery and distribution definitions do not require a direct transfer to the decedent, our holding is limited to the facts presented here. The Defendant does not challenge the proximate cause element of the offense, and we therefore have no occasion to address how that requirement of Tennessee Code Annotated section 39-13-210(a)(3) operates in other factual circumstances.

the interview, she confronted the Defendant with three facts: that surveillance footage placed his van in the motel parking lot; that Ms. Griffin had identified him as the source of the drugs she purchased; and that TBI testing confirmed the substance was fentanyl, which caused the victim's death by overdose. When presented with these facts—including the explicit identification of the substance as fentanyl—the Defendant did not deny that the substance was fentanyl, express surprise at that identification, or claim that he had sold something else. Instead, he responded, "I didn't mean to hurt anyone. I thought I had cut it enough."

Viewing this response in the light most favorable to the State and drawing all reasonable inferences in favor of the verdict, as we are required to do, *see Rimmel*, 710 S.W.3d at 645, the jury could reasonably draw two related inferences. First, the Defendant's failure to deny that the substance was fentanyl—when directly told so by the detective—is circumstantial evidence that he knew the substance contained fentanyl or, at a minimum, was aware of a substantial risk that it did. The jury could reasonably infer that a person who genuinely believed he had sold only heroin would have had reason to say so.

Second, the Defendant's statement—"I thought I had cut it enough"—supports an inference that he understood the substance's dangerous nature and attempted to reduce that risk, rather than being unaware of what he was distributing. Detective Pulley testified that, in her training and experience, dealers cut drugs either to increase profit by adding volume or to avoid killing their customers. She further testified that users do not cut drugs because they want the substance to be as potent as possible. The jury was entitled to credit this testimony and to infer that the Defendant's reference to "cutting" the substance placed him in the role of a seller who understood the lethal risk it posed.

Taken together and viewed in the light most favorable to the State, these inferences support a finding that the Defendant was aware of a substantial and unjustifiable risk that the substance he distributed was fentanyl or carfentanil and that he consciously disregarded that risk by distributing it. A rational trier of fact could further find that this conscious disregard of a known and serious risk—one the Defendant himself recognized as capable of killing another person—constituted a gross deviation from the standard of care that an ordinary person would exercise under the same circumstances. We conclude that the evidence is legally sufficient to establish the mens rea element of the offense.

As noted above, the Defendant does not challenge that his conduct was the proximate cause of the victim's death. Accordingly, we conclude that the evidence presented at trial was legally sufficient for a rational trier of fact to find beyond a reasonable

doubt that the Defendant was guilty of second degree murder. The Defendant is not entitled to relief.

## B.   CONFRONTATION CLAUSE ISSUES

The Defendant next contends that the trial court erred by permitting a substitute expert witness to testify about the victim's cause of death. Specifically, he argues that the testifying witness based his testimony on the autopsy report of the examiner who performed the autopsy but did not testify at trial. Citing *Smith v. Arizona*, 602 U.S. 779 (2024), the Defendant argues that the ruling violated his right to confront the witnesses against him under the Sixth Amendment to the United States Constitution.

The State responds that the Defendant has waived this issue for appellate review because he did not object to the substitute examiner's testimony or to the admission of the autopsy report at any point during trial. It also argues that the Defendant is not entitled to plain error relief because he has not requested such review. We agree with the State.

### 1.  Background

As background for this issue, a forensic pathologist performed the victim's autopsy but did not testify at trial. Instead, the State called Dr. Christopher Geffre, a forensic pathologist employed by Nashville Forensic Medical Management Services, as a substitute expert witness. The Defendant stipulated to Dr. Geffre's qualifications as an expert in forensic medicine.

When the State moved to introduce the autopsy report, the Defendant did not object. He likewise did not object to Dr. Geffre's testimony at any point during the trial. The Defendant first raised a Confrontation Clause challenge in his first amended motion for a new trial, asserting that Dr. Geffre's testimony violated his Sixth Amendment right to confront the witnesses against him.

### 2.  Preservation of Issues in the Trial Court

The State argues that the Defendant did not preserve his Sixth Amendment claim because he failed to object at trial to the admission of the autopsy report or to the substitute examiner's testimony. Although *Smith v. Arizona* was decided after the trial concluded, the

State contends that existing preservation requirements still apply and that the Defendant's failure to object limits our review. Because preservation presents a threshold issue, we address it before turning to the merits of the Defendant's claim.

As an appellate court, our authority generally extends only to those issues that have been "formulated and passed upon in some inferior tribunal." *State v. Britton*, 710 S.W.3d 177, 203 (Tenn. Crim. App. 2025) (citation and internal quotation marks omitted). To preserve an issue for appellate review, a party must assert a timely objection in the trial court that identifies the specific ground for relief. *State v. Ruiz*, 716 S.W.3d 439, 453 (Tenn. Crim. App. 2024). This requirement serves an important function: it ensures that the trial court has the opportunity to assess the alleged error and correct it at a stage when effective relief is still possible. *State v. Kennedy*, No. M2013-02207-CCA-R9-CD, 2014 WL 4953586, at *10 (Tenn. Crim. App. Oct. 3, 2014), *no perm. app. filed*. For this reason, we have long been "extremely hesitant to put a trial court in error where its alleged shortcoming has not been the subject of a contemporaneous objection." *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).

The record confirms the State's position. The Defendant did not object at trial to the admission of the autopsy report, to the substitute examiner's qualifications, or to any portion of his testimony. Instead, the Defendant first raised a Confrontation Clause objection in his first amended motion for a new trial. A party may not forgo a contemporaneous objection at trial and then attempt to preserve the issue by raising it for the first time in a motion for a new trial. *State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020).

The fact that *Smith v. Arizona* was decided after the Defendant's trial does not alter this analysis. The right to confront witnesses under the Sixth Amendment—including the right to object to testimonial out-of-court statements introduced through a substitute witness—was well established before trial under *Crawford v. Washington*, 541 U.S. 36 (2004), and its progeny. Although *Smith* clarified how those principles apply when a substitute expert relies on the report of a non-testifying analyst, it did not create a new constitutional right previously unavailable to the Defendant. Even in the absence of *Smith v. Arizona*, the Defendant raised no issue at trial regarding his inability to confront the witnesses against him.

Even when a new rule is announced after a defendant's trial, appellate courts must still apply existing preservation requirements on direct review. *State v. Minor*, 546 S.W.3d 59, 70 (Tenn. 2018). As our supreme court has explained, "if a defendant fails to comply with appellate review preservation requirements, an appellate court must utilize the plain

error doctrine rather than plenary appellate review when applying a new rule." *Id.* Accordingly, the Defendant's failure to object to any Confrontation Clause issue at trial does not render the issue entirely unreviewable. Instead, it limits our review to plain error. *Id.*

However, the Defendant has not requested plain error review. A party seeking plain error relief must raise and argue that theory in the opening brief, just as with any other claim for appellate relief. *See, e.g.*, *Ruiz*, 716 S.W.3d at 453. Indeed, because the appellant generally bears the "burden to persuade an appellate court that the trial court committed plain error," *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007), the doctrine ordinarily applies only when a party affirmatively invokes it and advances a developed argument for its application.

Even if the Defendant reasonably believed that a *Smith v. Arizona* issue had been preserved, the State's brief squarely challenged that assumption by arguing that the Defendant failed to comply with the applicable preservation requirements. The Defendant did not file a reply brief or otherwise respond to the State's waiver argument. A party's failure to respond to a waiver argument typically precludes our consideration of plain error relief, except in "particularly compelling or egregious circumstances." *Ruiz*, 716 S.W.3d at 454. Because no such circumstances are present here, we decline to conduct plain error review on our own. The Defendant is not entitled to relief.

## CONCLUSION

In summary, we hold that the evidence is legally sufficient to support the Defendant's conviction for second degree murder by the unlawful distribution, delivery, or dispensation of fentanyl or carfentanil. We also hold that the Defendant has waived plenary review of any Confrontation Clause issue and is not entitled to plain error relief. We respectfully affirm the judgments of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE